A. O. SMITH CORPORATION, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*June 5—July 3, 1953.*

For the appellant there was a brief and oral argument by *L. A. Tarrell* of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.   An employer is not liable under the Workmen's Compensation Act unless the employee sustains an injury while performing service growing out of and incidental to his employment. While suicide was not pleaded by the appellant, appellant's petition for review before the commission denying that the accident arose out of the employment did raise the issue before the commission. Sec. 102.03 (1) (c), Stats., includes protection for the employee while going to and from his employment in the ordinary and usual way while on the premises of the employer. But there is also a limiting provision, sec. 102.03 (1) (d), which prevents liability where the injury is intentional or self-inflicted.

The issue on this appeal is whether there is any credible evidence which, if unexplained, would support the finding of the commission that the death of the employee, Fred Hild, occurred while he was performing service growing out of and incidental to his employment. *Hills Dry Goods Co. v. Industrial Comm.* 217 Wis. 76, 85, 258 N. W. 336; *Motor Transport Co. v. Public Service Comm.* 263 Wis. 31, 46, 56 N. W. (2d) 548.

The attorney general's argument, that there is credible evidence to sustain the finding that at the time of injury

Fred J. Hild was performing service growing out of and incidental to his employment, rests upon presumptions. First, he urges the presumption which arises from continuity of service, saying, "since, then, Hild had been working, and was in a place where he might properly be, the commission correctly applied the presumption of continuity of service." He next advances the argument that a presumption against suicide prevails, in the absence of fraud, unless the evidence before the commission permits of no such inference. The attorney general then concludes that whether these presumptions were overcome presented questions of fact for the commission.

Appellant insists that the burden of proof is on the claimant. He bases his contention on authority. In 28 R. C. L., Workmen's Compensation Acts, p. 812, sec. 99, we find the following: "The burden of furnishing evidence from which the inference can be legitimately drawn that the injury 'arose out of and in the course of' employment is said to rest upon the claimant, . . . The facts may be shown . . . however, by circumstantial evidence." Professor Arthur Larson in 2 Workmen's Compensation Law, p. 323, sec. 80.33, states: "The burden of proving his case beyond speculation and conjecture is on the claimant. He is aided, in some jurisdictions, by presumptions that help to supply the minimum evidence necessary to support an award, and which shift the burden to the defendant when some connection of the injury with the work has been proved."

The commission was of the opinion that the presumptions of continuing employment and against suicide were not overcome, and we can disturb that finding only if there is credible evidence which so rebuts these presumptions that they will no longer support the inferences drawn therefrom upon which the commission based its findings.

The circumstances appearing from the evidence in this case, as will be seen by a review of the testimony are capable of supporting no inference other than that the act leading to Hild's death was intentional and did not grow out of the employee's employment.

On the morning of November 4, 1950, just before his death, which occurred about noon of that day, as the witness Wittbrod testified, Hild "was wheeling concrete that I mixed. I talked to him but could get no answer from him. On other mornings we always visited. . . . He said he was going home, that he did not feel good." Hild was at that time standing some distance from the acid tank in which his body was found shortly after. One Gilmore, who was hauling acid from the tank with a tank truck, testified that he was at the opening of the tank at 11:35 a. m. and that the wooden cover and the grate over the opening of the underground tank were on at that time. Exhibit 5, printed herewith, correctly shows the arrangement of the hose, the wooden cover, and the grate over the opening of the underground tank when Gilmore left. Hild was seen standing waiting for the bus at about 12 o'clock. Shortly after, the bus driver, Isadore Hansen, in response to a call, passed that point, but Hild was not there. When Gilmore returned to the tank at 12:40 p. m., the tank cover was removed and the hose was down in the tank. He looked into the tank and saw the body of Fred Hild. Exhibit 6, also printed herewith, shows the opening of the underground tank after the cover had been removed. There were exhibits in the record showing a general view of the immediate location where Hild's body was found.

Hild was a man five feet nine inches tall, weighing about 180 pounds. The opening through which his body had to pass to enter the tank was only 23 inches by 20 inches, and

Exhibit 5.

Exhibit 6.

it was covered by a grate and wooden cover. The only way in which he could enter through so small an opening would be to hold his arms close to his body. It is a matter of common knowledge that a person accidentally falling would not so hold his arms but would extend them in an effort to break the fall, or grasp some object.

In reviewing the evidence in this case, we deem it proper to refer to the general background of the claimant. In February, 1950, he married Angeline Hild and moved into her apartment which she rented in the city of Milwaukee. He continued to live with her, but she paid the rent and furnished everything required for the home. He wanted to move to the country and she refused. She had considerable trouble with him, and he struck her repeatedly. Before his marriage to Angeline Hild, he had been a patient at various times at the Milwaukee County Institution for Mental Diseases, where he had been diagnosed as suffering from dementia praecox. The institution's record of claimant in 1939 shows that he had been found by his relatives in jail where he had gone with the complaint of having swallowed poison. As late as 1950 he was admitted to the Milwaukee County Institution suffering from acute alcoholism and was at that time considered by one of the doctors as psychotic and dangerous. The final notation on his record at the institution reads: "Expired 11/4/1950—Jumped in vat of acid—per Med. Exam. Office."

The circumstances thus set forth present evidence which overcomes the presumption against suicide. The presumption, therefore, ceased to constitute credible evidence which if unexplained would support the commission's findings. We do not find any evidence connecting Hild's death with his employment by plaintiff except that it occurred on the premises of the employer. It is considered, therefore, that the inferences drawn by the commission on which it based its findings are not reasonable and that the findings must fail,

because there is nothing in the evidence which a reasonable mind may accept as adequate to support a conclusion that the injury and death occurred while Mr. Hild was performing a service for his employer, or that the injury or death arose out of his employment.

*By the Court.*—Judgment reversed and cause remanded with directions to set aside the award.