PETERSON, Special Administratrix, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*January 13—February 8, 1955.*

For the appellant there was a brief and oral argument by *Ormund W. Capener* of New London, attorney, and *Frederic C. Eberlein* of Shawano of counsel.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

CURRIE, J.   The sole issue on this appeal is whether the accident arose out of the employment.

Mrs. Minnie Freeman who was the city clerk of the defendant city of New London sustained a broken right hip as a result of falling on the concrete sidewalk in front of the New London city hall on her way to work on the morning of January 16, 1951. Four months later she suffered a paralytic stroke from cerebral apoplexy which may have been due to a blood clot resulting from the fracture. She filed an application for workmen's compensation against the city,

which is a self-insurer under the Workmen's Compensation Act, and at the time of the hearing thereon was totally disabled.

At the time of the accident Mrs. Freeman was sixty-nine years of age and a widow. For some time prior thereto she had suffered from chronic arthritis and a heart condition which her attending physician diagnosed as a heart muscular weakness, but was not afflicted with either high blood pressure or hardening of the arteries. On the morning of the accident she alighted from a taxicab in front of the city hall and crossed approximately eight feet of sidewalk to the three steps leading to a platform, which platform led directly into the building. One Stewart, the city welfare director, was standing on the sidewalk. He testified that when she got out of the taxicab that she said something about not feeling well. Stewart ascended the steps intending to open the door for her and Mrs. Freeman followed and ascended to the level of the second step.

That which then ensued is perhaps best stated by the following question-and-answer testimony of Stewart:

"*Q*. You testified she reached the second step, is that correct? *A*. Yes, sir.

"*Q*. Then what actions did Mrs. Freeman display? *A*. Just wavering as though she were going to fall.

"*Q*. Do you know whether or not she tripped on any of the steps? *A*. I don't think she did.

"*Q*. Then what action took place by Mrs. Freeman after she started to weave? Can you explain as to how she either went forward or backward? *A*. Went backward.

"*Q*. Did she step down? *A*. Yes, she stepped down off the steps.

"*Q*. When [where] did you get hold of her? By the left sleeve, I believe it was? *A*. Yes, when she started to step backwards. . . .

"*Q*. It's your testimony then that Mrs. Freeman's actual fall took place on the sidewalk, is that correct? *A*. Yes. She backed down the steps."

Stewart had but one arm and when Mrs. Freeman fell he still held the left sleeve of her coat in his hand. He testified positively that the steps were free of any ice. The risers of the two steps were each seven inches in height and the width of the steps was eleven and a half inches each.

The commission made the following findings of fact upon which it based its order dismissing Mrs. Freeman's application:

"The proof does not establish that there was any hazard connected with the steps which resulted in applicant's collapse and fall on the sidewalk. The testimony indicates that it is probable that injury would have occurred as it did had applicant been on a flat surface at the time she commenced to sway. There is no proof that the steps contributed toward impetus which caused applicant to fall. The fall was due to a personal condition not caused or aggravated by work."

The undisputed testimony of Stewart amply supports the commission's finding that there was a complete failure of proof that Mrs. Freeman's fall was due to any hazard connected with the steps, inasmuch as there was no medical testimony that the exertion of climbing two steps had induced a heart attack which caused her to sway.

The case of *Milwaukee E. R. & L. Co. v. Industrial Comm.* (1933), 212 Wis. 227, 247 N. W. 841, cited by plaintiff's counsel is readily distinguishable from the case at bar. In that case an employee sustained a heart attack while ascending the third or fourth step of a flight of stairs and fell and fractured his skull. The medical testimony was that the death was due to the skull fracture rather than the heart attack. The commission found that the skull fracture resulted because of the height from which the employee fell. There was medical testimony that it was a severe fracture which was more likely to result from a fall from a height than a fall from a standing position on the floor. While this court upheld the award of death benefits in that case, the opinion

rather indicates that if the fall had resulted from a heart attack not induced by the employment while the employee was standing on a level surface, recovery of benefits would have been denied.

If the steps had nothing to do with Mrs. Freeman's falling, it is difficult to see how the accident arose out of her employment. Sub. (1) (e) of sec. 102.03, Stats., makes it mandatory that "the accident . . . causing injury arises out of his [or her] employment" in order that there be liability under the Workmen's Compensation Act. The burden of proof to establish that an accident arose out of the employment is upon the claimant. *A. O. Smith Corp. v. Industrial Comm.* (1953), 264 Wis. 510, 512, 59 N. W. (2d) 471.

The commission specifically found, *"The fall was due to a personal condition not caused or aggravated by work."* This certainly was a reasonable inference to be drawn from the undisputed facts. Where the commission makes a finding of fact based upon the drawing of a reasonable inference from undisputed facts this court will not disturb a determination based on such finding. *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 70, 56 N. W. (2d) 525. Surely, in the instant case where Mrs. Freeman had an existing heart condition and was not feeling well, and there was not the slightest evidence that anything in either the structure or condition of the steps caused her to sway and fall, the commission could reasonably infer that there was nothing about her employment that caused or aggravated her fall.

While appellant's counsel correctly state in their brief that the question on this appeal is whether there is credible evidence to sustain the findings of the commission, they argue that an unexplained fall must be held as a matter of law to arise out of the employment in the absence of any evidence to the contrary. 1 Larson, Law of Workmen's Compensation, p. 100, sec. 10.31, states that unexplained falls are generally held compensable by invoking such a presumption.

Without determining whether in a proper case, of an entirely unexplained fall of an employee during the course of his or her employment, this court would decide the case on the basis that there exists a presumption that the accident arose out of the employment, there was credible evidence in the instant case tending to rebut such presumption. Such was the evidence hereinbefore referred to which we deem was sufficient to permit the commission to draw the inference therefrom that the fall was due to a personal condition not caused or aggravated by the employment.

In the recent case of *Rick v. Industrial Comm.* (1954), 266 Wis. 460, 63 N. W. (2d) 712, the employee was found unconscious on the floor of the body and paint department of a public garage, in which he was employed, with his head and shoulders under the automobile on which he had been performing a welding operation while standing in an upright position. He died in a hospital a few hours later. A postmortem examination disclosed that death was due to a fresh skull fracture indicating that the same had been caused by a recent fall, and the physician performing the post-mortem was of the opinion that it could not have been due to the injuries received in an automobile accident over two weeks before. However, the employee's head had been injured in such automobile accident and he had resulting headaches therefrom. He had complained on the day of his fall of having pain in the back of his head which felt as though someone had hit him there with a hammer. The commission found that the deceased most probably fell and died as a result of the effect of the injury sustained some two weeks previously (which previous accident occurred outside of the course of his employment), and that it would be conjectural to find that his death arose out of his employment. On the basis of such finding, an order was entered denying workmen's compensation benefits, and both the circuit court and this court upheld such order. The fall was not, in the strict sense of

the word, *"unexplained"* because the previous head injury and resulting, severe headaches provided as logical an explanation to account for the fall as would the employment in which the employee was engaged at the time of the fall.

In *Dentice v. Industrial Comm.* (1948), 254 Wis. 159, 161, 35 N. W. (2d) 218, this court stated:

"The rule is if the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation it would be the duty of the commission to deny compensation on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be. *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42, and cases cited."

We believe that the application of the foregoing rule enunciated in the *Dentice* and *Beem Cases* requires us to uphold the findings and order of the commission in the instant case.

*By the Court.*—Judgment affirmed.