KRESGE, Appellant, vs. MINER AMUSEMENT COMPANY and another, Respondents.

*January 13—February 10, 1942.*

For the appellant there were briefs by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

For the respondents there was a brief by *Coe & Cameron* of Rice Lake, and oral argument by *Lawrence S. Coe*.

ROSENBERRY, C. J.   This controversy arises out of the following facts: On the 28th day of October, 1932, the Neon Manufacturing Corporation of St. Paul, Minnesota, entered into a contract with the Miner Amusement Company of Rice Lake, Wisconsin, by which it agreed that it would manufacture and deliver according to specifications a neon sign, in consideration of which the Miner Amusement Company, hereinafter called the "Company," was to pay $675, $75 in cash, and on the same day and as a part of the same transaction it gave its note for $600, which was executed and signed as follows: "Miner Amusement Co., G. E. Miner." It was payable in twelve equal instalments.   It was in the usual form of a judgment note, and recited that it was "secured by a conditional sales contract, executed by the undersigned bearing even date herewith and covering the purchase of 3 neon signs." The note was payable "to the order of myself or ourselves" and was indorsed: "Miner Amusement Co. (Buyer's Signa-

ture) G. E. Miner, Neon Mfg. Corp., by H. Goldbloom, Treas."

From the evidence it appears that the Neon Manufacturing Corporation was unable to secure from its financial backer the necessary funds to manufacture and deliver the sign and did nothing further in regard to the contract. From the testimony it appears that Miner made a trip to St. Paul to ascertain why the sign was not delivered. He consulted with one E. A. Liebhardt, who advised him of the refusal of the finance company to furnish the funds, and that he should see Miss Kresge. Miss Kresge says that Miner called her on the telephone, and further states:

"He wanted to know why the sign wasn't started at that time and I told him it was on account of the finance company. Then he asked me to go ahead with it and he would keep the payments up at $50 a month, and that he wanted the sign as soon as he could get it. That happened just before this November when it went into the factory on the 14th; a few days before that. Following that talk then I ordered the factory to make the sign. . . . Mr. Miner told me to go ahead as per contract. That according to the agreements in the contract he would pay me if I would go ahead and build it, and I went on his word. What I mean is, he said if I would go ahead and build it he said he would pay this $50 a month, as this contract called for. . . .

"We had not done any work on the sign before I had this talk over the telephone with that man who said he was Miner."

Plaintiff then proceeded with the construction of the sign and delivered it in accordance with the understanding between her and Miner. No payments having been made, the cognovit judgment was entered as already stated. With the defendants' motion to vacate the cognovit judgment, the defendants served a proposed verified answer. In their answer the defendants set up (1) the fact that the Neon Manufacturing Corporation was a foreign corporation, not licensed to do business in the

state of Wisconsin, and for that reason the contract was void and the defendants under no liability to the plaintiff; (2) that the signature of the defendants was procured by false and fraudulent representations; and (3) that there was a breach of warranty.

The plaintiff at no time amended its original complaint. Upon the trial the court found, in addition to the facts already stated, that the first suggestion by the plaintiff that she relied upon an oral agreement rather than upon the written agreement evidenced by the note and contract, was on January 30, 1941, during the course of taking her deposition; that shortly after the execution and delivery of the note and contract the Neon Manufacturing Corporation sold, indorsed, and assigned the note in question to the plaintiff, retaining the down payment. The court concluded as a matter of law that the statute of limitations had run as against the oral agreement which the plaintiff testified was made by the parties late in the year of 1932; that the plaintiff cannot rely thereon but must rely upon the original cause of action set out in the complaint, namely, the note which was made a part of it and the contract which accompanied it; that the commencement of action on the written contract cannot toll the statute of limitations as against an action on the alleged oral contract. The court also found as a fact that evidence as to the making of the oral contract was duly and seasonably objected to on the ground that it was not within the pleadings.

From a bare statement of the facts in this case it is apparent that the plaintiff does not rely upon the note. The allegation of the complaint in that respect is:

"The above-named plaintiff complains of the defendants above named and shows to the court: That the defendants above named on the 28th day of October, 1932, made, executed and delivered for valuable consideration certain note in writing dated that day, whereby the defendants promised to pay themselves six hundred dollars," etc.

That the plaintiff is now the lawful owner and holder thereof and the defendants are indebted to the plaintiff in said sum. The plaintiff nowhere asserts that she agreed to perform the contract entered into by the Neon Manufacturing Corporation for the corporation. Both she and the witness Liebhardt testify that the finance company refused to furnish the funds; that nothing was done until Miner's trip to St. Paul. She testified that he promised to pay $600 according to the terms of the note if the plaintiff would manufacture and deliver the sign.

Under the facts disclosed by the evidence there can be no recovery upon the note because the contract of which it was a part was never performed. When the plaintiff agreed that she would construct and deliver the sign at her own cost and expense and the defendant agreed to pay for it in accordance with the terms of the note, a new contract was made, but the new contract is not set out or referred to in the complaint in this case. It is a well-established principle of law that where an action is brought upon an express contract and during the course of the proceedings the complaint is amended so as to introduce a new and independent cause of action, the action on that cause of action is not commenced until the amendment is allowed and if it is then barred by the statute of limitations, it is error to allow the amendment. *Meinshausen v. A. Gettelman Brewing Co.* (1907) 133 Wis. 95, 113 N. W. 408. See 37 C. J. p. 1074, § 511, and cases cited.

The plaintiff did not amend her complaint. The court held that the evidence with respect to the new promise was not admissible under the pleadings for the reason that it set up a new cause of action which was barred by the statute. In reply to this the plaintiff cites the following case referred to in *Meinshausen v. A. Gettelman Brewing Co., supra,* with approval, *Whalen v. Gordon* (8th Cir. 1899), 95 Fed. 305. In that case it was said (p. 102) :

"There are three established tests that are always useful to determine the identity of two causes of action: Will the same evidence support both? Will the same measure of damages govern both? And will a judgment against one bar the other?"

It is manifest that the same evidence does not support the cause of action stated in the complaint and the cause of action on contract which the plaintiff sought to establish on the trial. Upon the note and the contract as signed no cause of action exists because there was no performance of the contract. It nowhere appears that the plaintiff agreed with anyone other than the defendant to construct and deliver the sign. She did not so agree with the Neon Manufacturing Corporation. The plaintiff at the request of Miner agreed to construct and deliver a sign in accordance with the contract for which the defendant agreed to pay her in accordance with the terms of the note. This merely made a new contract, the terms of which were fixed by reference to the contract dated October 28, 1932. She would be entitled to recover if she performed in accordance with her oral agreement with Miner and had alleged the facts in her complaint. The complaint never having been amended to set up the new contract, and the defendants having seasonably objected to the introduction of the evidence, no right of recovery exists, and the trial court correctly so held.

*By the Court.*—Judgment affirmed.