MILWAUKEE MALLEABLE & GREY IRON WORKS and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*January 14—February 10, 1942.*

For the appellants there was a brief by *Wood, Warner & Tyrrell* of Milwaukee, and oral argument by *John C. Warner*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

WICKHEM, J. The sole question in this case is whether there is any evidence to sustain the award of the Industrial Commission. This requires a review of the facts.

Applicant was born in Poland, January 8, 1872, and had worked as a molder in foundries for some twenty-five to thirty years. The last fifteen or sixteen years of his employ-

ment was at plaintiff's foundry. He quit work on May 19, 1936, and on August 14, 1937, had his right leg amputated above the knee because of tuberculosis of the knee joint. Applicant's father died of pneumonia in 1913; one of his daughters died October 15, 1933, in applicant's home from pulmonary tuberculosis. Applicant had had tuberculosis during childhood and this left a primary focus in the lung. He had had pleurisy, evidently in young manhood, which left a calcium plaque above the left diaphragm and he also had a tuberculous scar in his right upper lung. An X ray of applicant's chest was taken on December 30, 1932, and this disclosed a disputed stage of silicosis, as well as the old tuberculous infection. A subsequent X ray was taken on August 20, 1937, and this showed no change in the chest condition. For more than a year prior to the operation involving amputation at the knee, applicant had suffered severely, and after the amputation developed clinically active pulmonary tuberculosis. The examiner found that applicant's silicosis resulted from his occupation as a molder and his employment at plaintiff's foundry; that the silicosis was a material factor in reactivating the pulmonary tuberculosis; that prior to the clinical activity of the tuberculosis the silicosis maintained the tuberculosis in a pathologically active state; that the tuberculous condition of the knee was a result of the spread through the blood stream of germs from the pathologically active lesion in the lungs, and hence that applicant suffered from an occupational disability.

It is contended that the award is based upon speculation, is not sustained by the evidence, and that the case is wholly governed by the decision of this court in *Liberty Foundry, Inc., v. Industrial Comm.* 233 Wis. 177, 288 N. W. 752. The objections to the award may as well be taken up in the order in which they are made.

The first attack upon the findings is that there was no substantial evidence that work at plaintiff's plant contributed to

produce applicant's silicosis, or to further its development. We cannot assent to this contention. It was virtually conceded upon the record that plaintiff's plant was an ordinary foundry; that working there was a dusty occupation; that persons working there were subjected to silica dust. From the fact that defendant had worked there for sixteen or seventeen years, it was inferred that work for this employer had tended to promote the silicotic condition. It appears to us that this is a legitimate and substantial inference. There is applicable here a statement of this court in *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 142, 233 N. W. 722, where this court said:

"The deceased had been employed for eleven years in a dusty occupation. It is a matter of common knowledge that such occupations give rise to lung troubles and that a continued exposure increases the difficulty and greatly diminishes the chances of recovery. While this does not appear in the evidence, it is a matter of common knowledge." See also *Kannenberg Granite Co. v. Industrial Comm.* 212 Wis. 651, 250 N. W. 821.

The inferences from the two X-ray examinations are probably not conclusive. The fact that an X ray in 1932 showed a relatively early stage of silicosis after applicant had worked in plaintiff's plant for some ten or twelve years rather supports the conclusion that there must have been exposure and development during this time. The fact that an X ray five years later showed no change in condition is possibly open to an inference that the conditions of work in plaintiff's plant were not such as to produce silicosis, but in the face of evidence that the conditions were such as to produce silicosis as well as evidence of a substantial improvement in working conditions during the later years, the second X ray cannot be treated as the basis for any compelling conclusions. The situation here is quite different from that in the *Liberty Case, supra.* There the applicant had worked only for about two

years in the employ of the employer who was sought to be held for compensation. He was examined when he entered this last employment, and the examination disclosed a first or second degree of silicosis. There was no evidence of any increase in this condition, and under these circumstances this court was compelled to hold that there was no evidence that work for the last employer made any contribution toward the disability.

It is suggested by plaintiff that foundries vary so greatly as to the nature of operation and safety devices that inferences of the type necessary to sustain the commission's findings cannot be indulged in. There is, however, evidence that this foundry was sufficiently dusty so that one could write his name on the wall and that silica was present in the dust. It is also claimed that the *Zurich Case* and *Kannenberg Case, supra,* involve workers in stone, and that it is a matter of common knowledge that these occupations carry a much greater hazard of silicosis than the ordinary foundry. This may weaken the inference in the case of a foundry worker, but it does not rob it of substantial strength. It may, indeed, account for the fact that after so many years of working in foundries applicant had not developed a particularly advanced case of silicosis.

We now proceed to a more difficult problem, and that is the causal relation between applicant's silicosis and the clinically active tuberculosis ultimately developed by him. Plaintiff's contentions are, (1) that applicant's medical evidence does not include either the theory or opinion that the silicosis had anything whatever to do with causing the tuberculosis to enter into the blood stream or cause active tuberculosis to set up in applicant's knee joint; (2) that the medical opinion of applicant's medical experts is wholly upon the basis of average figures or statistics that there is a higher incidence of tuberculosis in silicotics and has nothing to do with the cause of

tubercular activity in this particular applicant; (3) that applicant's doctors admitted that there were other factors in this case quite apart from the silicosis which are adequate to account for the end result and the disability.

We shall state briefly the evidence that in our view sufficiently supports the commission's findings. There is positive evidence by applicant's doctors that the silicosis was a material factor in keeping pathologically alive the tuberculous lesion or lesions in applicant's lung; that the presence of silicosis predisposed applicant to reactivation of the tuberculosis, either spontaneously or by contact with germs of the disease. It was practically conceded by all the doctors that the condition of the knee resulted from a metastasis of germs from the pathologically active lesions into the blood stream and the settlement or congregation of those germs in the knee joint. We discover no evidence that this metastasis was contributed to by the silicotic condition but we deem this immaterial. The clinically inactive lung lesion was, according to the opinion of the doctors, kept pathologically alive by the silicosis and in this condition was capable of metastasis, spontaneous reactivation, activation by lesions produced by the metastasis, or by contact with the germs of tuberculosis. Upon this evidence, the commission was entitled to find that silicosis was a material causative factor.

The inference is not fatally affected by the concession of applicant's doctors that there were other causes which might have contributed or which in the absence of silicosis could adequately explain the end result. The possibility that tuberculosis might develop in a given individual, independently of silicosis cannot obscure the fact that silicosis increases susceptibility to tuberculosis, and is a frequent factor in rendering active a presently inactive lesion. It is probable that at least until death occurs, followed by an autopsy, there can be no absolute scientific demonstration of the causal relation be-

tween a given case of silicosis and the incidence of active tuberculosis. Such proof, of course, is unnecessary, provided that medical experts can testify that the preponderance of probabilities is that the silicosis was a material factor in the development or progress of the tuberculosis. See *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W. 641; *Pfister & Vogel L. Co. v. Industrial Comm.* 194 Wis. 131, 215 N. W. 815. The claim that medical evidence produced by applicant is based, not upon any factors observed in applicant's case, but rather on statistics, making the incidence of tuberculosis in silicotics higher than in those not suffering from silicosis is, we think, hypercritical. No doubt, this may be one of the general bases for medical opinion as to the relation between silicosis and tuberculosis, but there is positive evidence, not merely by applicant's doctors, but also by two doctors called by plaintiff that silicosis was a substantial cause of applicant's disability.

We conclude that the evidence here sustains the findings of the commission, (1) that applicant developed silicosis in the plant of plaintiff; (2) that this condition was a material causative factor in the reactivation of applicant's tuberculous lesion, and consequently a cause of his disability.

*By the Court.*—Judgment affirmed.