PERLSON (Philip), Respondent, v. DAIRYLAND MUTUAL INSURANCE COMPANY and another, Appellants.

PERLSON (Robert), Respondent, v. SAME, Appellants.

*March 5—March 31, 1964.*

For the appellants there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *James T. Murray*.

For the respondent there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *Albert J. Goldberg.*

FAIRCHILD, J.  1. *Judgment in favor of Robert Perlson.* Although defendants appealed from this judgment, they have suggested no error which could possibly affect it, and it will be affirmed.

2. *Are the damages awarded to Philip Perlson supported by the evidence?* The jury assessed Philip Perlson's damages as follows: Medical and hospital expenses: $4,866; Loss of earnings: none; pain and suffering and disability: $12,500. Appellants' attack on the damage findings is based on a claim that there was no evidence to show that Philip Perlson's sufferings after the accident were caused by it. Appellants do not seem to be concerned with the amount awarded if cause be adequately established, nor with any possible inconsistency in finding that there was no loss of earnings. We shall, therefore, concern ourselves only with the matter of causal relationship.

The problem arises because Philip Perlson has had serious manifestations of trouble with his lower back for a number of years, both before and after the 1958 collision. The issue is whether the 1958 collision was a substantial factor in pro-

ducing the episodes which followed it, or whether they were stages of a process of degeneration which would have developed as they did without any substantial contribution from the 1958 collision.

Philip Perlson was born in 1920, and was forty-two at the time of trial. In 1954 he had been in the hospital with difficulties that were diagnosed and treated as related to the heart, although one of his complaints included occasional back pain.

In March, 1955, Perlson stopped his car for a traffic signal and was struck from the rear. Symptoms which he experienced thereafter ultimately brought forth a diagnosis of a herniated disc and an operation was performed in August, 1955. The disc involved was between the fourth and fifth lumbar vertebrae. He continued to see Dr. Waisman, one of his doctors, until March 5, 1957. Dr. Waisman then considered that Perlson had a 25 percent permanent partial disability. He recorded Perlson's reporting occasional pain. Dr. Waisman felt these were complaints to be expected with the surgery, and that by March, 1957, his condition had stabilized.

The day after the accident of December 7, 1958, Philip Perlson saw Dr. Diamond and was treated by him for about two months, upon a diagnosis of cervical sprain, lumbar back sprain, and left sacroiliac back sprain. On March 8, 1960, Perlson went back to Dr. Diamond. His back appeared deformed to the right and he complained of severe pains in his back radiating down his legs. Dr. Diamond put him in the hospital for sixteen days, applying traction and other treatments. His opinion was that the condition resulted from a recurrence of a slipped disc or a new slipped disc.

Dr. Mufson also saw Philip Perlson thereafter and in April, 1961, had a myelogram performed. Dr. Mufson con-

cluded that there should be further surgery to correct the recurrent herniated disc and a herniated disc below the fifth lumbar vertebra. He performed the operation in June, 1961.

Perlson continued to experience pain. In March, 1962, he was put in the hospital for bed rest and traction. He was there twenty-four days, without significant relief. Dr. Mufson and Dr. Waisman performed an operation on May 16, 1962, fusing the spine from the fourth lumbar vertebra to the sacrum. Dr. Waisman testified that Perlson would have considerable permanent disability because the fusion operation limits mobility. The doctor said the disability was increased over the disability present in March of 1957, before the 1958 accident.

Dr. Diamond testified, over objection, that in his opinion the 1958 accident was the cause of the condition he diagnosed the next day and that the second slipped disc, in March, 1960, was due to the 1958 accident.

Dr. Mufson testified, over objection, that in his opinion the 1958 accident was "a factor in lighting up his symptoms and reinjuring the disc" and that "the accident was a factor in producing this second herniation and therefore there is a relationship between whatever results permanently and that accident."

It is clear that these opinions, both expressed in terms of a reasonable degree of medical probability, were sufficient to support a jury finding that the accident was a cause of substantial pain, suffering, and disability as well as medical and hospital expense, unless these opinions are shown to lack sufficient foundation as a matter of law.

The challenge to these opinions is that in forming them the doctors assumed a condition between March, 1957, and December 7, 1958, which was not substantiated by the facts. Dr. Diamond said he considered that Perlson "obtained a complete cure from this particular operation [1955] and

was perfectly well and without trouble with his back until this accident of 1958." Counsel had asked Dr. Mufson to assume certain facts as to the period between February, 1957, and the 1958 accident. These included Perlson's reporting acute pain to Dr. Waisman in February, reporting some pain, but improvement in March, 1957, Dr. Waisman's report of 25 percent permanent partial disability and that Perlson would have limitations in his ability to perform heavy physical work and that from the last time he saw Dr. Waisman in March, 1957, until the 1958 accident he had had no further complaints of pain and disability in his back and had continued to perform his work with no complaints and had not had to return to a doctor in that period.

In stating his opinion, Dr. Mufson said it was based on the fact that between 1957 and 1958 Perlson was feeling quite well, carrying on his work and getting along well and he did not see any physicians during that interval.

The argument is that the assumptions made by the two doctors were inconsistent with the claims and medical finding in 1957 that Perlson was 25 percent disabled, together with the report of pain from time to time that Perlson had made to his doctors prior to March, 1957.

Philip Perlson testified that he had gone to see Dr. Waisman in February, 1957, because of an episode of pain and reported to him in March, that he had improved; that he had claimed a disability in 1957 because he was not allowed to do any heavy work and got easily fatigued, especially upon standing or walking; that when he last saw Dr. Waisman March 5, 1957, he had made a pretty good recovery, but would fatigue easily on standing and had to be careful. Upon our review of the record, it appears sufficiently established that Perlson had reached a condition by March of 1957 which remained stable until the 1958 accident and the jury could properly have interpreted the testimony as to

Perlson's condition during that time as consistent with the assumptions made by the doctors, particularly Dr. Mufson.

A claim is also made that other causes of the ultimate difficulty were not sufficiently excluded. The onset of severe pain in March, 1960, occurred while Perlson was in or was getting out of bed. While Perlson was on his way to the doctor's office one day in 1961, he was again in a collision in which his car was struck in the rear while stopped in traffic. Perlson said he felt no worse after this accident. Although there was testimony that herniation of a disc can result from twisting in bed or other slight causes, these facts did not destroy the probative value of the expert opinions.

The learned circuit judge who saw and heard the witnesses reached the conclusion that the evidence supports the finding that the 1958 accident was a cause of Philip Perlson's subsequent suffering and increased disability. We agree.

3. *Rejection of evidence.* Defendants offered proof that on July 11, 1957, Perlson effected a settlement for the injuries received in the collision in March, 1955, and was paid $13,000. The offer was rejected. Under the circumstances the ruling was correct. The only facts about the 1955 accident which could be relevant to the instant case were the nature and permanence of the injuries which resulted. These had all been brought before the court and jury. The offered proof added no relevant facts and did not tend to impeach the testimony of any witness.

4. *Amendment of complaint.* In the original complaint Philip Perlson alleged he had,

". . . suffered a cervical sprain to the lumbar region of the back, a sprain to the left sacroiliac, a herniation of the intervertebral disc between the 4th and 5th lumbar vertebrae, and an aggravation of a pre-existing discogenic disorder of the lumbar region of the back; . . ."

About six weeks before trial, plaintiff's counsel moved for leave to amend alleging that he had made an error through inadvertence in the paragraph describing injuries. In the proposed amended complaint, which the court allowed, the quoted statement was changed as to read:

". . . suffered sprains to the cervical and lumbar regions of the back; a sprain of the left sacroiliac, a herniation of the fifth lumbar intervertebral disc, an aggravation of a pre-existing discogenic disorder of the 4th lumbar interspace; . . ."

We can find no abuse of discretion in permitting the amendment. It appears to have been essentially a correction of a misstatement which in all probability was inadvertent, as claimed. It did not set out a new and separate cause of action so as to evade the statute of limitations by way of amendment.[1]

*By the Court.*—Both judgments affirmed.

---

[1] See *Kresge v. Miner Amusement Co.* (1942), 239 Wis. 575, 579, 2 N. W. (2d) 236; *Fredrickson v. Kabat* (1953), 264 Wis. 545, 547, 59 N. W. (2d) 484; *Blooming Grove v. Madison* (1958), 4 Wis. (2d) 447, 457, 90 N. W. (2d) 573.