McCraw, Respondent, v. Witynski, Appellant.

*No. 303. Argued June 3, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 537.)

314

316

318

For the appellant there was a brief by *Cornelisen, Denissen, Kranzush, Kuehn & Condon,* attorneys, and *Shannon D. Mahoney* of counsel, all of Green Bay, and oral argument by *Mr. Mahoney.*

For the respondent there was a brief by *Kopish, Miron & Boyle* and *William P. Kopish,* all of Marinette, and oral argument by *William P. Kopish.*

HANLEY, J. Three issues are raised on this appeal:

(1) Did the trial court abuse its discretion in striking the second amended answer;

(2) Does the evidence sustain damages for medical expenses in a sum greater than $923; and

(3) Was the jury's award for loss of earnings and for personal injuries excessive?

*Second Amended Answer.*

The purpose of the second amended answer was to raise the issue of the negligence of other members of the Florence volunteer fire department who were nonparties to the action.

The plaintiff contends that since this answer was interposed after the three-year statute of limitations [1] had

---

[1] *See* sec. 893.205 (1), Stats.

run and since the defendant knew of the alleged negligence of the other members of the fire department prior to the running of the statute of limitations, the defendant was foreclosed from pleading any other person's negligence which caused this accident.

An interesting problem would be posed if there were any allegation or any proof that the defendant deliberately withheld information concerning a tort-feasor (or tort-feasors) unknown to the plaintiff until after the statute of limitations had expired, and then he attempted to shift the majority of the negligence to the nonparty (or nonparties). This case does not present that situation, however. Both the plaintiff and the defendant knew the other members of the volunteer fire department and both knew who participated in the hose test in question. The plaintiff decided to sue just the defendant who was the pump operator. Had he so desired, he could have named as defendants Tom Witynski, the other nozzleman, William Taft, the chief of the fire fighters, or anyone else present. The plaintiff deliberately chose not to name those persons even though their participation in the events which occurred on May 3d was fully known to him. The plaintiff, under the facts of this case, should not be able to complain that the defendant raised the negligence of these and other known parties after the statute of limitations had expired. In a different case, the objection raised by the plaintiff here may be proper. That question will be reserved for judgment in such a future case.

In any event, the trial court here decided not to permit the pleadings to be amended. Two reasons were given: First, the second amended answer was served after the pretrial and only two weeks before the trial was to begin. Second, the defendant did not request the permission of the court to file the amended pleadings. The trial court also pointed out, before trial, that nothing would prevent the defendant from presenting his proof that others were

negligent and then amending his pleading to the proof pursuant to sec. 269.44, Stats.,[2] after the verdict.

Sec. 269.44, Stats., gives the trial court wide discretion as to amendment of pleadings. *See Wipfli v. Martin* (1967), 34 Wis. 2d 169, 173, 148 N. W. 2d 674, wherein the court quoted from *Turner Mfg. Co. v. Gmeinder* (1924), 183 Wis. 664, 669, 198 N. W. 611, as follows:

" 'It is well settled that when a trial court keeps within the limitations imposed by the statute as to allowing amendments, the power is very broad, resting in sound discretion, and the decision will not be disturbed except for a clear abuse of judicial power.' "

Ordinarily the court is asked to determine that a trial court *did* abuse its discretion in permitting pleadings to be amended. In this case, as in a few others, the court is presented with a situation wherein the trial court refused to permit the amendment of the pleading.

In *Wipfli v. Martin, supra,* at pages 173 and 174, this court stated:

"The cases cited above all sustain the action of the trial court in instances wherein the pleadings were amended.

"Conversely, in *Platt v. Schmidt* (1902), 115 Wis. 394, 398, 91 N. W. 992, where the trial court refused to allow the amendment, it is stated:

" 'When it appears that an omission in any proceeding is material, or that proceedings taken by a party so fail to conform to provisions of law as to be fatal to rights which might otherwise be protected, and that such omis-

[2] "**Amendments of processes, pleadings and proceedings.** The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

sion or failure is through mistake, inadvertence, surprise, or excusable neglect, it is abuse of discretion to refuse to supply such omission and permit amendment of the proceedings so as to remove the technical obstacles to a litigation of the merits of the controversy.'

"From these cases and others we conclude the rule to be that sec. 269.44, Stats., should be liberally construed to permit the amendment of pleadings so as to present the entire controversy providing the amendment does not unfairly deprive the opposing party of timely opportunity to meet the issue created by the amendment."

The trial court cannot be held to have abused its discretion in denying the amendment to the pleading because the presentation of the merits of the defendant's case was not prejudiced.

In granting the plaintiff's motion to strike the amended answer, the trial court pointed out that the defendant would nevertheless be permitted to introduce evidence showing that a nonparty or nonparties were negligent and that a question concerning the negligence of the nonparties could be submitted to the jury.

The defendant never attempted to introduce evidence which indicated that parties other than the litigants were negligent. Neither did he object to the form of the verdict which merely required the jury to compare the negligence of the plaintiff with that of the defendant.

The defendant's contention notwithstanding, it appears that the merits of this case were fully tried. The jury found that the defendant was four times as negligent as the plaintiff. Had a certain percentage of the negligence been attributed to nonparties, the ratio of the defendant's negligence to the plaintiff's negligence would undoubtedly have remained the same. The defendant, as a joint tort-feasor, would have been liable for even a greater percentage of the damages. Under circumstances similar to this one, this court has consistently held that

persons in the position of the defendant here could not have been prejudiced.

"Moreover, the defendants were not prejudiced by the omission to include negligence on the part of Finley in the total causal negligence which the jury was to take into consideration in finding the percentage thereof attributable to the plaintiff and Wescott, respectively. If the jury had found that a certain percentage of that total negligence was attributable to Finley, that would have left a balance of less than one hundred per cent attributable to Wescott and the plaintiff; and if the jury had apportioned that balance between the latter two in the same ratio in which it apportioned the one hundred per cent between them (as the jury presumably would have done), then,—even though the percentage attributable to each of them would have been less than eighty-five and fifteen per cent, respectively,—the percentage found attributable to the plaintiff would have continued to be less than the percentage attributable to Wescott. In that event, in computing the amount which the plaintiff would be entitled to recover under the verdict, the deduction from the jury assessment of damages would have to be a smaller percentage thereof than the fifteen per cent deduction made under the verdict which was returned; and the defendants would have been liable to the plaintiff for the full amount of his consequently greater recovery. Therefore, the omission to have the jury include negligence on the part of Finley in finding what percentage of the total negligence was attributable to Wescott and the plaintiff, respectively, was not prejudicial to the defendants . . . ." *Patterson v. Edgerton Sand & Gravel Co.* (1938), 227 Wis. 11, 22, 23, 277 N. W. 636. *See also*, *Hardware Mut. Casualty Co. v. Harry Crow & Son, Inc.* (1959), 6 Wis. 2d 396, 94 N. W. 2d 577; *Ross v. Koberstein* (1936), 220 Wis. 73, 74, 264 N. W. 642.

The defendant was given every opportunity to present the merits of his case. Under such circumstances there was no abuse of discretion in denying the amendment to the pleadings shortly before trial. Even if we were to determine that the trial court abused its discretion, the error could not have been prejudicial.

*Medical Expenses.*

The jury awarded the plaintiff medical expenses of $2,219.85. The defendant contends that a certain bill from St. Vincent's Hospital, in the amount of $1,291.85, should be deducted from this total. It cannot be denied that the amount of this bill was included in the jury's award.

The defendant objected to the admissibility of the hospital bill on two grounds: First, it was a photostatic copy which appeared to have been altered; and second, there was no testimony that the bill was a reasonable charge for the services rendered to the plaintiff.

It is uncontested that the plaintiff was hospitalized at St. Vincent's from September 8, 1965, to September 17, 1965, for surgery, and from November 9, 1965, to December 10, 1965, for physical therapy. The plaintiff's attorney stated on the record that it was his guess that the original bill was in the hands of the workmen's compensation carrier who paid the bill. The plaintiff testified that the photostat was a copy of the bill which he received from the hospital for the hospitalization referred to above. The doctor who authorized the plaintiff's hospitalization, testifying by deposition, stated:

"*Q.* Dr. Nellen, was this hospitalization required for the care and treatment of Ernest McCraw?

"*A.* In my estimation it was.

"*Q.* Doctor, did you read into the record the total of that bill? Is that total $1,282.20?

"*A.* $1,291.85.

"*Q.* Is that a fair and reasonable charge for the care and services that were rendered to Ernest McCraw for this hospitalization?

"*Mr. Mahoney:* That is objected to on the grounds the doctor may not have seen him at all times or may not be basically aware of the treatment accorded him at all times. *If I am sustained, the answer is out. If I am overruled the answer is in.*

"*The Court:* You are overruled." (Emphasis supplied.)

The record does not indicate on its face that the question concerning reasonableness was ever answered by Dr. Nellen. However, the emphasized comment by the defense attorney certainly indicates that the doctor answered the question "Yes" prior to the overruling of the objection.

As far as the alteration of the photostat is concerned, the bill consists of three pages. On the third page, which indicates that a portion of the bill was paid, there has been an attempt to remove the name of the insurance company which paid the bill. On all the pages of the bill, the subtotal column has been scribbled out, but it is still legible.

In *Grunwaldt v. State Highway Comm.* (1963), 21 Wis. 2d 153, 163, 164, 124 N. W. 2d 13, a situation similar to the one presented by this case developed:

". . . In the present case the originals were sent to appellant who stated that he had turned them over to prior attorneys not present in court. To have the trial delayed for the mere purpose of producing the original letters when there is no real dispute as to their authenticity would serve no purpose useful to the court. Under those circumstances it is considered to be in the trial court's discretion to allow the copies into evidence. . . ."

The trial court felt that the copy was sufficient:

"Very frankly, Bud, I am not going to concern myself with that. I am not going to hang this thing up because we haven't got the Superintendent of the hospital up here in Florence to testify the bill is reasonable. If this is the bill the hospital actually submitted and sent out to somebody and they claim here they are entitled to payment of that bill, I am going to admit it."

Under the facts of this case, it was not error to admit the photostatic copy of the hospital bill into evidence.

### Excessive Damages.

The defendant contends that the jury's award of $10,000 for personal injuries and $18,200 for loss of earn-

ings was excessive. He asks the court to determine a reasonable amount of damages.

The defendant further contends that, although the trial court approved the jury's verdict, it did not analyze the evidence which it relied upon. Therefore, the defendant contends that this court must analyze the evidence *ab initio* under the rule of *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911.

The trial court's review of the evidence was brief:

> "6(b) is the loss of earnings and all the jury had to do to arrive at the answer it did arrive at, which was large, was to believe the plaintiff. If they disbelieved the plaintiff, they would have given an entirely different answer, I assume. That's what makes a jury issue, and there was conflicting testimony on that point and the plaintiff's testimony was that he was barely able to move his arm and he had to work one-handed and his ability to do any kind of work was severely restricted. The jury believed him and the answer is entirely proper."

Later in his opinion the trial court stated:

> "You allege that 'the verdict is perverse and indicates passion and prejudice.' I don't think so. I think that the jury could very easily have found that the plaintiff suffered damages in the amounts that the jury found. I think it is well within the realm of reasonableness.
>
> "The $18,000 loss of earnings. This man had 19½ years life expectancy, as I recall. According to his testimony, which the jury had a right to believe, he had literally no use of this arm.
>
> "His personal injuries. The jury could very well have found the figure it did, and could very well have found a larger figure without indicating passion or prejudice."

This review of the evidence is simply not sufficient to amount to an analysis. For an analysis that was sufficient, *see Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587.

"... Because of the absence of an analysis by the trial court, this court on appeal must 'review the entire record as a matter of first impression and ascertain

whether, in its judgment, the verdict is excessive.' "
*Bach v. Liberty Mut. Fire Ins. Co., supra,* at p. 83, citing
*Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27
Wis. 2d 13, 24, 133 N. W. 2d 235.

If there is any credible evidence which under any reasonable view supports the jury finding, the verdict will be approved.

As far as the loss of earnings is concerned, it is uncontradicted that the plaintiff's life expectancy was nineteen and one-half years from the time of trial. The plaintiff testified that prior to the accident he worked some part-time jobs which provided an annual income of $1,700. The plaintiff's 1963 income tax return showed an income of $1,372.61 from part-time jobs. His 1964 tax return showed an income of $1,219.37 from part-time jobs. Since the accident, plaintiff was unable to work the part-time jobs because of his shoulder disability.

Prior to the accident plaintiff's primary occupation was that of courthouse custodian for the Florence county court. The job consisted of maintenance and general repair work for five hours a day, five days a week. Since the accident, plaintiff testified that he was unable to perform much of the maintenance and repair work. He was able to keep the job because his wife and sons assisted him with the heavy work. Since 1966, two members of the Neighborhood Youth Corps assisted plaintiff in the performance of his job. The jobs that plaintiff is now assisted on were the same jobs that plaintiff had been able to perform by himself prior to the accident. All three doctors that testified in the case stated that plaintiff suffered some permanent disability to his right shoulder.

The record also indicates that plaintiff was unable to work at all from May, 1965, to January, 1966.

It does not appear that an award of $18,200 for loss of past and future earnings was excessive.

Turning now to the award for personal injuries—the evidence discloses that plaintiff's major complaint was

an injury to the right shoulder which resulted in continuous pain and discomfort and a limitation in motion. On the day of the accident and immediately following it, the plaintiff testified that he was subject to intense pain. Plaintiff had surgery on the shoulder in the fall of 1965. He remained in the hospital for nine days at that time. Both prior to and after the surgery, every movement or elevation of the right arm resulted in a throbbing and burning sensation in the right shoulder. While the testimony of the three doctors varied to some extent, they all agreed that the plaintiff had only limited movement in his right arm and shoulder and that he had suffered a permanent injury. Dr. Freedman testified that the presence of pain was a permanent condition. Dr. Schroeder testified that the right shoulder muscle was degenerating, that there was an abnormal projection of the bones in the plaintiff's right shoulder, that the right arm was practically useless, and that the extent of adduction of plaintiff's arm was deteriorating. Dr. Nellen's testimony conflicted with that of the other doctors to a certain extent, but he too testified that the plaintiff's injury was permanent. Plaintiff was prescribed pain-killing medication which he was taking up to the time of trial.

The evaluation of pain and suffering is peculiarly a jury function. It does not appear that the jury's award for the personal injury was excessive or even high and it must be affirmed.

*By the Court.*—Judgment affirmed.