SIMPSEN and husband, Appellants, v. MADISON GENERAL
HOSPITAL ASSOCIATION, Respondent.

*No. 189. Argued October 7, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 586.)

500

For the appellants there were briefs by *Kersten & McKinnon*, attorneys, and *Kenan J. Kersten* of counsel, all of Milwaukee, and oral argument by *Kenan J. Kersten*.

For the respondent there was a brief by *Jenswold, Studt, Hanson, Clark & Kaufmann* and *Robert R. Studt*, all of Madison, and oral argument by *Robert R. Studt*.

WILKIE, J.  Two issues are raised by this appeal:

1.  Whether the trial court erred in determining that there is no evidence of record attributing the disability of Mrs. Simpsen, beyond mere aggravation, to the trauma.

2.  Whether the trial court erred in excluding part of the testimony of Dr. Hommel, a podiatrist, concerning the relation of the trauma to the osteomyelitis.

*Extent of Mrs. Simpsen's injury due to neglect of hospital.*

On this review we are governed by the rule that if there is any credible evidence, either facts or inferences which may be reasonably drawn from them which, under any reasonable view, supports the verdict of the jury, it ought not to be disturbed by the trial court.[1] Here, there is no dispute about the fact that on the morning after the surgery was performed by Dr. Sachtjen on Mrs. Simpsen's left foot, she fell as the result of negligence of a nurse employed by the defendant hospital, and that Mrs. Simpsen twice struck her foot at the operative site and bore her full weight upon that foot. The hospital record shows that on the first examination after this incident, the foot at the operative site appeared inflamed and swollen. This is not unusual following an operation. The record shows that four days later treatment with antibiotics was begun. The record is not clear as to the reason for doing so, although it is common procedure to begin antibiotic therapy at the first sign of infection, usually inflamation or tenderness.

On February 19, 1965, Mrs. Simpsen was released from the hospital still under antibiotic medication, but was re-admitted for eight days on February 26, 1965, because of pain and drainage at the operative site. The pain continued and shortening of the bone became observable and on June 4, 1965, she was readmitted for eight days with an admitting diagnosis of osteomyelitis at the operative site.

Two doctors testified at the trial, Dr. Sachtjen, the surgeon, and Dr. Howard Mahaffey, a nontreating doctor who examined Mrs. Simpsen for the defendant.

Dr. Sachtjen testified that following the operation, Mrs. Simpsen had developed an infection and eventual

---

[1] *McCraw v. Witynski* (1969), 43 Wis. 2d 313, 326, 168 N. W. 2d 537.

osteomyelitis which was resolved, but which left her with a shortening of the bone and a scar-tissue formation at the operative site, which were permanent residuals of the osteomyelitis. These residuals resulted in a derangement of her static equilibrium, problems of proper weight bearing, and pain and discomfort which would be permanent.

Dr. Howard Mahaffey, testifying in behalf of the defense, agreed that Mrs. Simpsen's disabilities were related to the infection she sustained following her operation.

Although both agreed that it was the infection sustained by Mrs. Simpsen that caused her present disabilities, the trial court determined that plaintiff had failed to prove that the trauma incident was the cause of the infection.

Dr. Mahaffey testified that, in his opinion, there was no relationship between the trauma and the post-operative infection, noting that his opinion would be different if there were an opening of the wound and oozing. The hospital records not only fail to indicate any opening of the wound, but rather, indicate the opposite.

The testimony of Dr. Charles H. Miller by deposition was read into evidence. He was in attendance following surgery and checked Mrs. Simpsen after her fall. Reviewing the various hospital notes and reports, he stated he had "evidently" not changed the dressing since there was no indication of doing so in the report. He testified: "We don't like to change dressings in such a case immediately postoperatively except for some bleeding or something grossly wrong, so I'd say I did not change the dressing . . . ."

He further stated that had there been bleeding, excessive swelling, etc., it would have "definitely" been noted in his report. In addition, he noted the report of Dr. Lucas, an associate of Dr. Sachtjen, who was in charge of Mrs. Simpsen while Dr. Sachtjen was out of town, which indicated he changed the dressing on Feb-

ruary 14th, the day after the trauma, noting the wound was clean. Subsequent entries by Dr. Lucas indicated antibiotics were prescribed on February 17th, but that the wound was clean, with no drainage; and that the wound was clean on February 19th when Mrs. Simpsen left the hospital. There was evidence in the records that Mrs. Simpsen received strong medication for pain.

Consequently, it appears Dr. Mahaffey's opinion, that the trauma had no relation to Mrs. Simpsen's postoperative disabilities, stands in the absence of any indication that there was drainage or opening of the operative wound.

Dr. Sachtjen, testifying for plaintiff, stated that in operations of this type infection occurs unexplained in approximately two percent of the cases. He read two letters he had written to Dr. Hommel, a podiatrist in Baraboo, who was caring for Mrs. Simpsen. In the first, dated March 15, 1965, he noted that Mrs. Simpsen had suffered the trauma and stated:

"This can cause considerable pain reaction and some temporary oozing at the suture line, which caused a readmission period of a week a short time later."

The second, dated February 10, 1966, noted the shortening of the bone and her continuing manifestation of pain, caused by "a form of nonunion" of the surgically severed bone. He then stated:

"As you know, she developed an infection when the wound split open the first day she stepped on it, and this has been an offending condition."

On cross-examination, Dr. Sachtjen stated that the hospital records did not indicate any drainage and showed that the wound was clean throughout Mrs. Simpsen's postoperative period at the hospital.

The following testimony of Dr. Sachtjen is particularly pertinent:

"*Q.* Well, now, you're satisfied there was an infection; isn't that right? *A.* Yes.

"*Q.* But, Doctor, to a reasonable medical probability, is it not correct that you cannot give us an opinion as to where this infection originated? *A.* That is correct; I cannot.

"*Q.* . . . is it true, Doctor, that you have no opinion to a reasonable medical probability . . . as to whether any traumatic incident such as falling or bumping had anything to do with this infection? *A.* That is correct.

". . .

"*Q.* And, as a result, it is a fact, is it not, Doctor, that you just don't have an opinion as to what caused the infection? *A.* That's correct."

The following hypothetical question was asked by plaintiff which we quote together with Dr. Sachtjen's answer:

"*Q.* Do you have an opinion, Doctor, first of all, assuming—since you weren't actually present when this occurred—but assuming that following the operative procedure, the first postoperative morning, Mrs. Simpsen, in being helped out of her bed by a nurse, struck and bore her full weight on the actual location of the surgery, and then assuming the facts that you observed and heard of in your continuing treatment of Mrs. Simpsen, do you have an opinion, Doctor, to a reasonable degree of medical probability that—as to whether this trauma contributed as an aggravating factor to the eventual development of osteomyelitis? *A.* It would be my opinion it was a contributing factor, yes."

But, as we have stated:

". . . The key point in a hypothetical question is the facts that are assumed and form the premises. If these facts fail in any important particular then necessarily the answer or conclusion that assumes the facts must fail." [2]

"It is well-established law that the opinion of an expert medical witness, testifying on behalf of an injured

[2] *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. 2d 67, 77, 117 N. W. 2d 646.

person, is acceptable only if the facts assumed in a hypothetical question are proved to a reasonable degree of certainty. Thus, in a normal case, unless all facts upon which the medical witness based his conclusions are supported by adequate evidence, the conclusion itself must fall." [3]

The question does not specify the facts Dr. Sachtjen was assuming, that he "observed and heard of in [his] continuing treatment of Mrs. Simpsen" but the record clearly shows that there was no oozing of blood or split wound at the operative site that were required to show a causal connection between the trauma and infection.

As to Dr. Sachtjen's statement that the trauma was "a contributing factor" to the eventual development of osteomyelitis, and his further statement that he felt the trauma "aggravated the condition as it existed at the time the trauma occurred" whether the infection "occurred at the time of surgery or after the surgery," on recross examination, Dr. Sachtjen testified further as follows:

"*Q.* And that the trauma itself, assuming that the wound was clean and assuming the wound wasn't broken and there was no drainage, as the records show, would not cause the infection, would it? *A.* No.

"*Q.* As a matter of fact, the aggravation would be a temporary condition, the end result would be no different; isn't that right? *A.* I couldn't say—answer yes to that, no.

"*Q.* You really don't know; is that right? *A.* That's correct.

"*Q.* So— *A.* I don't know.

"*Q.* So isn't it your opinion that this probably—based on analyzing the records as we have them, and your own personal knowledge, that, first of all, you don't know whether this bumping or falling or whatever it was, if it did happen, whether it had anything to do with her troubles or not, and, if so, to what extent; isn't that right? *A.* I certainly don't know to what extent it had

[3] *McGaw v. Wassmann* (1953), 263 Wis. 486, 492, 57 N. W. 2d 920, 58 N. W. 2d 663.

to do. I do feel that it aggravated, and I don't think I can expand upon that. As I have said, I must take the responsibility of the surgeon as the possibility of the two percent infection.

"*Q.* But this could have happened if this infection is, as you describe, one of these two percent cases; the end result could well be the same anyway, with or without the trauma? *A.* Yes.

"*Q.* The trouble here isn't the trauma; it's the infection, isn't it? *A.* Yes, the infection is the trouble."

Thus, even viewing the evidence in the light most favorable to the plaintiffs, the connection between the trauma and Mrs. Simpsen's disabilities has not been established. Both Dr. Mahaffey and Dr. Sachtjen stated the disabilities are a result of the infection, and that, in the absence of any indication that the incisional wound was opened by the trauma and that drainage occurred, it could not be stated to a reasonable degree of medical certainty that the trauma caused the infection.

Further, Dr. Mahaffey testified that in his opinion, based on the hospital records, the trauma did not contribute to the infection. Dr. Sachtjen testified he had no opinion as to the cause of the infection and that the most he could say was that the trauma aggravated the condition existing postoperatively at the time of the trauma.

Appellant cites several cases in which this court held there was credible evidence on which the jury could base its verdict. However, in each of these cases the medical experts were able to state that the particular accident *caused* the particular disability.

For example in *Perlson v. Dairyland Mut. Ins. Co.*[4] one doctor testified that the accident there involved "was the cause of the condition he diagnosed the next day . . . ." Another doctor stated that "the accident was 'a factor in lighting up his symptoms and reinjuring the disc' . . . '. . . and therefore there is a relationship be-

---

[4] (1964), 23 Wis. 2d 391, 127 N. W. 2d 69.

tween whatever results permanently and that accident.' " [5]

And in *Schramm v. Dotz* [6] it was established that plaintiff had a "predisposition or propensity to rheumatoid arthritis prior to the accident," and that, in the opinion of each of three medical witnesses testifying for the plaintiff, the accident there involved was a *precipitating* factor which *activated* a pre-existing but dormant condition.[7]

In *Milwaukee Malleable & Grey Iron Works v. Industrial Comm.,*[8] a case in which plaintiff claimed that silicosis he contracted at work caused his disabling tuberculosis, this court required only that the "preponderance of probabilities is that the silicosis was a material factor in the development or progress of the tuberculosis." [9] The medical experts in that case stated that the silicosis was a substantial *cause* of the plaintiff's disabling condition, and it was reasonable to infer that the silicosis was contracted in plaintiff's employment.

Here, however, while it was agreed that the cause of plaintiff's disabilities was the postoperative infection, the inference that the infection was caused by the trauma appears unreasonable when one medical expert states it was not, and the other that he was not able to state how it was caused, both opinions being based on the complete absence of any indication that the incisional wound was opened or that drainage or oozing occurred. While Dr. Sachtjen testified the trauma aggravated the condition existing at the time of trauma, he could not state whether or not the aggravation was temporary or, on the other hand, whether the permanent result would be any different even with this trauma. In other words, the plain-

---

[5] *Id.* at page 395.

[6] (1964), 23 Wis. 2d 678, 127 N. W. 2d 779.

[7] *Id.* at page 682.

[8] (1942), 239 Wis. 610, 2 N. W. 2d 197.

[9] *Id.* at page 616.

tiffs, as to Dr. Sachtjen's testimony, failed in their burden of showing definite cause-and-effect relationship of the trauma to Mrs. Simpsen's permanent condition associated as it is with her infection.

Thus, even viewing the evidence adduced at trial in the light most favorable to the plaintiffs, although we are satisfied that Mrs. Simpsen suffered considerable pain and discomfort, we are also satisfied that the infection, which both medical witnesses agree is the underlying basis of her permanent disabilities, has not been shown by the evidence or by any reasonable inference therefrom to have been caused by the trauma which occurred on the day following her operation.

Because Mrs. Simpsen suffered considerable pain and discomfort, separable from her pain, discomfort and disabilities traceable to the infection, defendant's contentions on cross-appeal that the answers to the causal questions in the special verdict should be changed to "No" have no merit and plaintiffs are entitled to the reduced award entered by the trial court.

*The exclusion of the testimony of the podiatrist.*

The Baraboo podiatrist, Dr. Hommel, was allowed to testify in plaintiffs' behalf with respect to his consultations with Mrs. Simpsen both before and after the operation and his communications with Dr. Sachtjen. However, the trial court ruled that "the witness is not competent to render an opinion in the area of medical causation."

The question of an expert witness' qualifications is a matter resting in the sound discretion of the trial court, and unless it is shown that the trial court abused its discretion its ruling will stand.[10] Sec. 147.14 (2) (b),

---

[10] *Doelger & Kirsten v. National Union Fire Ins. Co.* (1969), 42 Wis. 2d 518, 167 N. W. 2d 198; *Shaurette v. Capitol Erecting Co.* (1964), 23 Wis. 2d 538, 128 N. W. 2d 34.

Stats., provides that the court may permit any person to testify on a medical matter where proof "satisfactory to the court" is presented as to the witness' qualifications.

Dr. Hommel is a podiatrist licensed by the State Board of Medical Examiners, with seventeen years of practical experience. He attended an accredited school of podiatry, where the curriculum included the basic sciences, orthopedics, bacteriology, histology. He is on the courtesy staff of St. Clare's Hospital in Baraboo, and the Reedsburg Municipal Hospital.

He testified that he had had experience in diagnosing the effects of trauma to the feet, experience in diagnosing osteomyelitis, and has performed corrective surgery of the nature of that herein involved. He had treated Mrs. Simpsen both before and after her operation, and communicated with Dr. Sachtjen about her postoperative condition.

This court has never specifically passed on the question of whether podiatrists are qualified to testify on strictly medical matters, although other courts have.[11] It has held osteopaths so qualified.[12] In *Allen v. Voje*[13] it was held not an abuse of discretion for a trial court to refuse to allow a trained nurse to testify on a strictly medical subject, especially where the party calling her had numerous qualified experts who were permitted to testify on the matter.

Our recent decision in *Cramer v. Theda Clark Memorial Hospital*[14] reiterates the standard on determining

[11] *Sanders Cotton Mill, Inc. v. Moody* (1940), 189 Miss. 284, 195 So. 683.

[12] *Bucher v. Wisconsin Central Ry.* (1909), 139 Wis. 597, 120 N. W. 518.

[13] (1902), 114 Wis. 1, 89 N. W. 924.

[14] (1969), 45 Wis. 2d 147, 151, 172 N. W. 2d 427.

whether expert testimony should be received as requiring that the witness " 'must have such skill, knowledge or experience in that field . . . .' " Discretion is still left in the trial court to determine whether the expert should be permitted to testify.

There was no abuse of discretion by the trial court here in excluding that portion of Dr. Hommel's testimony relating to the infection and the causes thereof. The question is not whether podiatrists generally are qualified to testify as medical experts, but whether in excluding the particular testimony in this particular case, the trial court abused its discretion.

". . . It has been stated in this respect that the responsibility for the exercise of the judicial power of determining whether a given witness has the qualifications which will permit him, to the profit of the jury, to state his opinion upon an issue of this kind, may best be left with the judge presiding at the trial, who has a comprehensive view of the issue and of all of the evidence, and the witness himself before his face." [15]

*By the Court.*—Order affirmed; option provided by such order is extended for a period of thirty days from remittitur.

---

[15] 31 Am. Jur. 2d, *Expert and Opinion Evidence*, p. 532, sec. 31.