NASH-KELVINATOR CORPORATION, Appellant, vs. INDUS-
TRIAL COMMISSION and another, Respondents.

*January 8—February 2, 1954.*

For the appellant there was a brief by *Shea & Hoyt,* attorneys, and *Hamilton T. Hoyt* of counsel, all of Milwaukee, and oral argument by *Edmund B. Shea.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Roy W. Webb there was oral argument by *M. Michael Essin* of Milwaukee.

FAIRCHILD, C. J.   The matter here involves an assault arising out of mob violence resulting in injury to an employee of appellant and raises the question as to liability under the Workmen's Compensation Act.

Recovery under workmen's compensation is not the same as recovery under the common-law doctrine of the law of master and servant.  Workmen's compensation statutes were passed "to ameliorate a social condition—not to define a situation or fix a liability by an adherence to the old common law.  Liability was imposed regardless of fault—vitally different from that under the common law." *Matter of Verschleiser v. Stern & Son,* 229 N. Y. 192, 199, 128 N. E. 126, 129.

The two essential tests which must be satisfied to show liability on the part of the employer under our Workmen's Compensation Act have been prescribed by statute: (1) That the employee at the time of the accident be performing service growing out of and incidental to his employment; (2) that the injury arise out of the employment.  These tests are independent tests and must be satisfied by separate showings of proof, but both tests must be proved to show liability.

Webb's testimony is undisputed and is to the following effect: After signing the statement, using his union designation, he worked all day July 20th, but heard no discussion among the employees concerning the statement.  He reported for work on Friday, July 21st, at the regular time but did not work the full day.  No one bothered him on that day.  He did go to the chief steward's office, and from there he and several of the board members went to the union office.  After leaving the union office, he did not return to the plant that day.  He was told by the officials to go home and to come to the meeting that night, where they would have a session

to resolve the problem. At the meeting he was asked to release a letter to the press "that I acted as an individual in signing the peace statement" and was told that he was then to return to work. Saturday, July 22d, was a workday, but he did not go to work on account of his cousin's funeral. On Monday, July 24th, he reported for work at the usual time. Around 7:30 a commotion was being created by a few individuals near the lunchroom door, 10 to 35 feet from his bench. He continued working and paid no attention. It was suggested that he go to the union office again. He got a pass around 8 o'clock and went down to the chief steward's office and from there went to the union office, where the board discussed the case and told him it would be best if he would go home for the rest of the day and they would notify him of any further developments. About 10 o'clock that night the recording secretary called him and told him to report to work the next morning. He (the recording secretary) said, "Pay attention to your work. Don't look at anybody else and just carry on your work. I know you know how to carry on your job and not get into trouble." Webb then asked, "Shall I report in the employment office with my son and the rest of the fellows?" and the secretary said, "No, on your regular job."

From this undisputed testimony, it is without question that Webb was completely within the scope of his employment. At the time of the attack he was at his bench on the job regularly assigned to him and was performing services in furtherance of his master's interest.

The controversy on this appeal arises out of the application of the second test—whether the injury arose *out of the employment*. The employer contends that the assault was motivated by a personal act of the employee performed outside of his employment and unconnected with his work, that the assault therefore was purely personal and self-invited, and that it did not arise out of the employment.

Ever since the enactment of workmen's compensation laws, courts have had to deal with that class of cases where the mere conditions and obligations of employment constitute a hazard, distinct from those cases in which the risk of injury is presented by the employee's regular duties. From judicial determination of this class of cases there gradually developed the "positional risk" doctrine, under which an injury is compensable if it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured. Wisconsin is among the states that have applied this doctrine, and the law is that " 'all that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.' " *Butler v. Industrial Comm.* 265 Wis. 380, 385, 61 N. W. (2d) 490. In other words, there is a causal connection between the employment and the injury where the employee is obligated by his employment to be present at the place where he encounters injury through the instrumentality of a third person or an outside force. Such cases include, among others, accidents arising from horseplay, weather conditions, and assaults.

When Webb was assaulted, he was peacefully performing the duties of his job at his bench where he was obligated to be by his employment. By his employment he was put in a place where the concentration of a large number of workers in a single plant furnished the environmental factor conducive to mob hatred and violence. An allowance of compensation is not controlled by differences in political beliefs or other adherences but by the acts of the injured in the scope of his employment and whether the accident arose out of the employment. We are not concerned with the fomenting cause. Where the work environment is one of the causative factors of the assault, it is immaterial whether the motive is or is not work connected. "Injury by an employee moved by some cause aside from his regular duties may be considered

an inevitable, however undesirable, result—a risk which is incident to the employment of many persons. It is a burden which industry may well bear under this legislation." *Matter of Verschleiser v. Stern & Son, supra* (p. 199).

Situations may arise where the injured employee may have, for the time being, completely disassociated himself from the employment relation. We find no incident of that character present. The facts here must be distinguished from such cases as *Peterman v. Industrial Comm.* 228 Wis. 352, 280 N. W. 379, where the appellant, instead of continuing, as required, in the course of his employment, deliberately stepped out of that employment. In that case, at page 358, we said:

"An employee may momentarily step aside from his employment, and such a step may effectually break the master and servant relationship. An employee may wilfully do a wrongful act for purposes entirely foreign to his employment, and while so acting take himself without the scope of his employment. *Firemen's Fund Ins. Co. v. Schreiber,* 150 Wis. 42, 135 N. W. 507; *Sheboygan Airways, Inc., v. Industrial Comm., supra* [209 Wis. 352, 245 N. W. 178]. Such a departure from the scope of one's employment, measured in terms of time and space, may be very slight. Nevertheless, if the act performed by one is in furtherance of his own purposes and without the scope of his employment, the master may not be liable. *Eckel v. Richter,* 191 Wis. 409, 211 N. W. 158."

In the case of *Matter of Verschleiser v. Stern & Son, supra,* it was said (p. 197):

"In the instant case the claimant was not the aggressor, but was attending to his master's business on his master's premises at the time of the assault. . . . In his excitement he defended himself by a counterattack upon, as it seems, another employee, with the resulting injury to himself. He did not initiate the 'melee' but was desirous only of transacting his master's business in peace."

In that case, as here, the Industrial Commission found that the claimant was engaged in the regular course of his employment, and that this is a finding of fact which is not to be disturbed on appeal. It was there said, also, page 197, that under the Workmen's Compensation Law a recovery "does not depend on any fault of the master or any negligence of the servant. The law was enacted to do away with the defenses which had governed the law of master and servant."

The same court, in the case of *Matter of Leonbruno v. Champlain Silk Mills,* 229 N. Y. 470, 471, 128 N. E. 711, in dealing with a case where an employee was injured while engaged in the performance of his duties by being struck in an eye by an apple which one of his fellow servants threw at another and in consequence of which act claimant had lost the better part of the sight of the eye, the court held that he was entitled to an award under the compensation law. In the opinion, Judge CARDOZO said, speaking of the applicant:

"He did not participate in the horseplay, and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in the course of employment,' within the meaning of the statute. . . .

"That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger.' "

It appears that there was credible evidence that Webb was within the scope of his employment, that he had not deviated from its purpose, and that he was furthering his employer's interest in engaging in the work that had been assigned to him and in so doing was performing service growing out of and incidental to his employment. *North End Foundry Co. v. Industrial Comm.* 251 Wis. 332, 29 N. W. (2d) 40.

From the facts appearing in the record, the commission found that the accident causing injury to defendant arose out of Webb's employment and that there was a causal connection between the injury and conditions and obligations of the employment.

It is considered that the judgment of the lower court should be affirmed.

*By the Court.*—Judgment affirmed.