CUTLER-HAMMER, INC., Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*October 7—November 5, 1958.*

For the appellant there were briefs by *Michael, Spohn, Best & Friedrich,* attorneys, and *Thomas S. Stone* and *James C. Mallatt* of counsel, all of Milwaukee, and oral argument by *Mr. Mallatt.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan, Beatrice Lampert,* and *John H. Bowers,* assistant attorneys general, and oral argument by *Mr. Bowers.*

For the respondent Louis Smedegard there was oral argument by *Robert E. Gratz* of Milwaukee.

HALLOWS, J. This appeal presents two questions: (1) Did the applicant sustain an accident causing injury arising out of his employment, and (2) was there a refusal or failure of treatment by the employer?

Not only is it necessary that the employee at the time of the accident be performing services growing out of and incidental to his employment but the accident causing the injury must arise out of the employment. Sec. 102.03 (1) (c) and (e), Stats.; *Nash-Kelvinator Corp. v. Industrial Comm.* (1954), 266 Wis. 81, 62 N. W. (2d) 567. There is no question here that the employee at the time of the accident was performing services growing out of and incidental to his employment. He was on the employer's premises on his way to punching out at the end of a workday. The

applicant argues there was no accident and if there was it did not arise out of the employment. In short, the appellant argues the accident must be caused by the job, relying in part on an article in 1941 Wisconsin Law Review, 279, and on a change in the statutes since the decisions of *Milwaukee E. R. & L. Co. v. Industrial Comm.* (1933), 212 Wis. 227, 247 N. W. 841, and *Montello Granite Co. v. Industrial Comm.* (1933), 212 Wis. 243, 248 N. W. 427. There is no dispute that the employee's disability at his right shoulder was caused by his fall. Was this fall an accident within the meaning of sec. 102.03 (1) (e)? An accident has been defined as a mishap. *Andrzeczak v. Industrial Comm.* (1945), 248 Wis. 12, 20 N. W. (2d) 551. This court has said that the term "accidental" means something unusual, unexpected, and undesigned. *Schmitt v. Industrial Comm.* (1937), 224 Wis. 531, 272 N. W. 486. This case involved a breakdown due to a pre-existing condition. In *Buettner v. Industrial Comm.* (1953), 264 Wis. 516, 59 N. W. (2d) 442, the employee's back was in such a condition that almost any exertion could have caused a disc to protrude, which did happen when he bent over while on the job to examine a motor. The court held there was no accident. *Peterson v. Industrial Comm.* (1955), 269 Wis. 44, 68 N. W. (2d) 538, involved a breakdown due to a pre-existing condition. The fall of the employee on the sidewalk as she started to go up the steps was caused by a heart condition. There was no proof the fall was due to any hazard connected with the steps which increased or aggravated her heart condition.

The next question is whether the accident arose out of the employment as required by sec. 102.03 (1) (e), Stats. 1955. This section was added to the statutes in 1933 by sec. 2 of ch. 402, Laws of 1933, providing the accident causing the injury "arises out of his employment." This provision in almost identical or similar language is found in the English

act which is the origin of most compensation laws and in the acts of most states. Prior to 1933 this court did say in *Milwaukee E. R. & L. Co. v. Industrial Comm., supra,* that there was no requirement that an injury "grow out of employment" in sec. 102.03, Stats. 1929. In *Montello Granite Co. v. Industrial Comm., supra,* this court said (p. 245) : ". . . as the act now stands, causation is no longer a necessary factor in liability under the act." This was said in reference to the repeal in 1931 by sec. 39 of ch. 403, Laws of 1931, of sec. 102.35, Stats., which provided that secs. 102.01 to 102.34, inclusive, were extended to include in addition to incidental injuries all other injuries, including occupational diseases, "growing out of and incidental to the employment."

The phrase "arises out of his employment" does not mean caused by the employment in the sense the employment is a moving force which produces the accident. The words "arise out of the employment" are not the same as "caused by the employment." True, this court and many other courts have sometimes said "arise out of" or "grow out of" has something to do with causal connection. Four basic interpretations of the phrase "arises out of his employment" can be discovered in the cases, to wit: A "peculiar or increased risk" doctrine, "actual risk" doctrine, "positional" doctrine, and proximate cause. 1 Larson, Law of Workmen's Compensation, p. 41 *et seq.,* sec. 6.00.

Under the "peculiar or increased risk" doctrine the accident arises out of the employment only when it arises out of a hazard peculiar to or increased by the employment and the hazard is not common to people generally. Most of the cases granting compensation involve risk or hazards of this type.

Under the "actual risk" doctrine an accident arises out of the employment if the employment subjects the employee to the actual risk which injured him although such risk is

also common to the public. Some cases excluded under the "peculiar risk" doctrine are granted compensation under this interpretation.

The "positional risk" interpretation has been phrased in various ways. The core of the idea is that an accident arises out of the employment when the connection between the employment and the accident is such that the obligation or circumstances of the employment places the employee in the particular place at the particular time when he is injured by a force which is not solely personal to him.

The most restricted and oldest interpretation is that "arises out of " means "proximately caused by" in the tort sense. Such an interpretation implies negligence or fault and is contrary to the theory and philosophy of workmen compensation acts. If the legislature meant "caused by his employment" it would have been easy to use such well-known language rather than the more unfamiliar phrase "arose out of." The phrase "arises out of his employment" places the word "employment" in a passive sense and a condition or situation out of which the accident or the cause of the injury arises. The accident must cause the injury under sec. 102.03 (1) (e), Stats., not the employment. The employment does not need to be the force producing or causing the accident. The accident need only to cause the injury and arise out of the employment.

Sec. 102.03 (1) (f), Stats., relating to employees whose employment requires them to travel, provides: "Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment." It would be illogical to say that an accident arising out of a hazard when the employee is off the premises and traveling shall arise out of his employment and not apply the same reasoning to accidents arising out of a hazard while the employee is on the premises.

This court for some time has followed the "positional risk" doctrine and the "personal comfort" doctrine, which

sometimes includes the "positional risk" doctrine, while interpreting the meaning of "performing services growing out of and incidental to his employment" under sec. 102.03 (1) (c), Stats. See *Van Roy v. Industrial Comm.*, post, p. 416, 92 N. W. (2d) 818.

Applying the "positional risk" doctrine it has been said accidents arise out of employment if the conditions or obligations of the employment create a zone of special danger out of which the accident causing the injury arose. Stated another way, an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of the location constituting a zone of special danger. *Nash-Kelvinator Corp. v. Industrial Comm.* (1954), 266 Wis. 81, 62 N. W. (2d) 567; *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. (2d) 261, 83 N. W. (2d) 714.

In the *American Motors Case* this court held the condition of employment created a zone of special danger when the employee was injured when his toe caught in a band of wire while alighting from atop of a pile of boxes, causing him to fall to the floor. In the *Nash-Kelvinator Case* a special zone of danger was created where the employee on the job was injured by an assault motivated by work-connected matters by fellow workers.

We are unable to distinguish the application of the "positional risk" doctrine as applied to horseplay, weather conditions, and assault cases from its application to the facts of this case. The concrete stairway which the employee was required to use in the course of his employment to punch the clock at the end of the workday created a special zone of hazard and his fall down these steps was an accident which arose out of his employment. We conclude on the facts here there was credible evidence to support the commission's

finding that the employee had an accident not due to his knee condition which caused the injury and arose out of his employment. The weight of evidence and credibility of witnesses are for the commission to decide. *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42; *Waseka v. Industrial Comm.* (1949), 255 Wis. 337, 38 N. W. (2d) 470.

There is no credible evidence to support the finding of refusal or failure of treatment by the employer. An injured employee who needs treatment must give his employer reasonable notice of such need before the employer can be said to neglect or refuse reasonably to do so within the meaning of sec. 102.42 (1) Stats. The employee gave no notice to his employer before going to the hospital and never asked his employer for any medical treatment that was refused him. The first knowledge the employer had that the employee was in the hospital was a letter from the Veterans Administration which did not identify the employee's condition as a workmen's compensation claim. This was not reasonable notice and placed no duty upon the employer to object. The employer has no duty to pursue an injured employee to ascertain his needs especially where, as here, the employee continuously had reports sent to the employer that his condition was noncompensable. In a nonemergency after an employee incurs the expense of an operation on his own initiative and without knowledge of his employer or prior notice, the employer cannot be held to have failed or refused to provide such surgery. The cases of *Milwaukee v. Miller* (1913), 154 Wis. 652, 144 N. W. 188, and *White Rock M. S. Co. v. Industrial Comm.* (1929), 200 Wis. 123, 227 N. W. 291, are controlling. The circuit court affirmed the order of the commission without reference to this question and should have reversed the commission on this question.

*By the Court.*—That part of the judgment affirming that part of the Industrial Commission's order based on the find-

ing there was a refusal or failure of treatment by the employer is reversed; in all other respects the judgment is affirmed.

MARTIN, C. J., and BROWN and FAIRCHILD, JJ., took no part.