UNIVERSAL FOUNDRY COMPANY, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

*No. 75–775. Submitted on briefs January 3, 1978.—Decided March 7, 1978.*

(Also reported in 263 N.W.2d 172.)

For the appellants the cause was submitted on the briefs of *Eugene C. Daly, John S. Skilton* and *Foley & Lardner* of Milwaukee.

For respondent, Department of Industry, Labor and Human Relations, the cause was submitted on the brief of

*Bronson C. La Follette;* attorney general, and *Stephen M. Sobota,* assistant attorney general.

DAY, J. This is an appeal from a circuit court judgment confirming a July 14, 1975 order of the defendant-respondent Wisconsin Department of Industry, Labor and Human Relations (hereafter D.I.L.H.R.). The D.I.L.H.R. order modified and as modified confirmed the March 17, 1975 findings and order of a D.I.L.H.R. hearing examiner. The July 14th order required the plaintiffs-appellants, Universal Foundry Co. and Employers Mutual Liability Insurance Company (hereafter companies) to pay worker compensation benefits to Frederick R. Buhrow (hereafter applicant) for silicosis disability.

The issues raised on this appeal are:

1. Were D.I.L.H.R.'s findings of ultimate fact adequate under sec. 102.18(1)(b), Stats. (1975) to support its award?

2. Was there credible evidence to support the D.I.L.H.R. findings that:

(a) The applicant was temporarily totally disabled by silicosis from September 22, 1968 to March 22, 1969?

(b) The applicant was permanently disabled after July 17, 1970?

The circuit court found the following facts:

"Applicant was born June 16, 1904 and started working at Universal Foundry in 1951, after having worked five years on a farm and eight years in a saw mill, which latter occupation was outdoor work. He worked there through July 17, 1970, when he retired at the age of 66, giving as a reason for such retirement respiratory distress. He had varying duties and he poured iron, helped clean up, shoveled dry sand, operated a muller, drove a forklift, helped clean castings, and at the end, drove a payloader.

"He was in apparent good health in 1951 and first noticed shortness of breath in 1963 or 1964.

"He was hospitalized at Berlin Memorial Hospital in May, 1967 with a diagnosis of coronary insufficiency. He was again hospitalized in September, 1968 for a condition his physician, Dr. Orricka, diagnosed as pneumonia. He also was found then to be suffering from chronic bronchitis and emphysema. He remained away from work for about six months at that time during which he received $60.00 per week disability payments, not workmen's compensation.

"He returned to work early in 1969 and worked regularly until his retirement."

The parties disagree on the extent and cause of plaintiffs' disability during and after his 1968 hospitalization and after his voluntary retirement on July 17, 1970.

Following a hearing on May 5, 1975 a D.I.L.H.R. hearing examiner made the following findings:

"That applicant commenced working for plaintiffs in 1951 and worked in a dusty atmosphere steadily until September 22, 1968, at which time he was disabled by the occupational disease known as silicosis; that on said date he entered a hospital for treatment of said disease; that he sustained accidental compensable injury in the nature of the occupational disease known as silicosis arising out of his employment with the respondent and that September 22, 1968 was the first date on which he was disabled by virtue thereof, which becomes the date of injury; that as a result thereof he was temporarily totally disabled from September 22, 1968 to March 22, 1969, . . . that he returned to work on March 22, 1969 and worked until July 17, 1970, <u>at which time he was forced to take early retirement because of the silicosis</u>; that from and after said date applicant became permanently totally disabled entitling him to compensation for life. . . ." (Emphasis supplied.)

On July 14, 1975 the D.I.L.H.R. commission modified the examiner's findings by striking the words underlined above, but affirmed the examiner's findings in all other respects.

*Adequacy Of Findings.*

The companies first argue that D.I.L.H.R.'s ultimate findings of permanent total disability are unsupported by basic or specific findings. In considering the companies' argument of insufficient basic findings the starting point is sec. 102.18(1)(b), Stats. (1975), providing in pertinent part that,

"After final hearing the department shall make and file its findings upon the ultimate facts involved in the controversy, and its order, which shall state its determination as to the rights of the parties. . . ."

This court has consistently held that sec. 102.18(1)(b), Stats. (1975) requires that D.I.L.H.R. only make findings of ultimate and not evidentiary facts. *Stommel v. Industrial Comm.,* 15 Wis.2d 368, 372, 112 N.W.2d 904 (1962) and cases cited therein.

In *Van Pool v. Industrial Comm.,* 267 Wis. 292, 64 N.W.2d 813 (1954), this court stated that,

"We deem it sufficient . . . to call attention to the rule that findings need be only as to the ultimate facts where the evidence before the commission is sufficient to establish the ultimate facts declared or found and such facts are inherent in and necessary to the determination of the questions involved in arriving at the decision. Our duty on the appeal is to address ourselves directly to the question on whether the record reveals any credible evidence to sustain the findings of the commission." *Van Pool, supra* at 267 Wis. 294; Accord, *Phillips v. I.L.H.R. Dept.,* 56 Wis.2d 569, 574, 202 N.W.2d 249 (1972); *Milwaukee v. Industrial Comm.,* 21 Wis.2d 129, 135, 124 N.W.2d 112 (1963).

In *Glodowski v. Industrial Comm.,* 11 Wis.2d 525, 527, 105 N.W.2d 833 (1960), the appealing applicant contended that the finding that "the silicosis from which the

applicant suffers is nondisabling in nature" was inadequate under sec. 102.18(1) (b), Stats. The applicant contended that,

"... to be valid the findings must contain more detail to demonstrate that the silicosis is nondisabling and, as it stands, the so-called finding is not a finding of fact but is a mere conclusion. The details which appellant wants are evidentiary facts upon which the ultimate fact of disability or nondisability might depend; but the commission is not required by statute to make findings of evidentiary facts. The facts which the statute requires are ' "the 'ultimate' facts, *i.e.*, the facts upon which the plaintiff's right of recovery or the defendant's right to defeat a recovery necessarily depends." ' *Gerue v. Industrial Comm.* (1931), 205 Wis. 68, 70, 236 N.W. 528. Appellant relies on *Molinaro v. Industrial Comm.*, (1959), 7 Wis.2d 252, 254, 255, 96 N.W.2d 328. In that case we criticized the findings because they did not find the ultimate facts —whether or not the claimant had suffered an injury, the nature and extent of the disability, and whether the applicant was entitled to recover the medical expense. In the present case the commission has found that appellant has incurred silicosis—suffered an injury—the extent of the disability was nil, and the amount of compensation due him for his nondisabling silicosis was stated." *Gladowski, supra* at 11 Wis.2d 527.

In the case at bar D.I.L.H.R. found in part that,

"... applicant commenced working for respondent in 1951 and worked in a dusty atmosphere steadily until September 22, 1968, at which time he was disabled by the occupational disease known as silicosis; ... that he sustained accidental compensable injury in the nature of the occupational disease known as silicosis arising out of his employment with the respondent and that September 22, 1968, was the first date on which he was disabled by virtue thereof, which becomes the date of injury; that as a result thereof he was temporarily totally disabled from September 22, 1968 to March 22, 1969 . . .; that he returned to work on March 22, 1969 and worked until July

17, 1970, . . . that from and after said date applicant became permanently totally disabled entitling him to compensation for life. . . ."

These findings state the cause, date and degree of disability arising out of the applicant's employment with the company's foundry. These are adequate ultimate findings.

The companies contend that under the rule of *Transport Oil v. Cummings*, 54 Wis.2d 256, 195 N.W.2d 649 (1972), D.I.L.H.R.'s ultimate findings must be supported by basic findings.[1] *Transport Oil, supra* was an unem-

---

[1] The companies label the D.I.L.H.R. findings of temporary and permanent disability as ultimate findings. An example of the missing basic findings, according to the companies is the lack of a finding on the extent to which silicosis aggravated the applicant's pre-existing, undisputed pulmonary condition.

Davis in his Administrative Law Text at sec. 16.04, pp. 322, 323 (1972) states the following about ultimate and basic facts or findings:

"An ultimate fact is usually expressed in the language of a statutory standard. Examples: the rate is reasonable; the applicant is fit, willing and able to provide the service; the action is in the public interest; the respondent has refused to bargain collectively; the injury occurred in the course of employment. Facts might theoretically be lined up on a scale from the most specific to the most general. At one end is each statement of each witness, then a summary of the testimony of each witness, then a summary of the testimony and other evidence on each side, then the basic findings, and at the opposite end the ultimate findings. Courts do not want agencies to include detailed summaries of testimony in their findings; they want what they call the basic facts. The ultimate finding may be and usually is mixed with ideas of law or policy. The Supreme Court has said: 'The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact.' *(Helvering v. Tex-Penn Oil Co.,* 300 U.S. 481, 491, 57 S. Ct. 569, 574, 81 L. Ed. 755 (1937).

". . .

"The basic findings are those on which the ultimate finding rests; the basic findings are more detailed than the ultimate finding but less detailed than a summary of the evidence. The Su-

ployment compensation case and the issue was whether Cummings was an employee within the meaning of sec. 108.02(3), Stats.[2]

The statute required a two step analysis,

"The first step is to decide whether a person falls within the purview of par. (a) : That he is an 'individual who is or has been performing services for an employing unit, in an employment.' If the person meets the test of par. (a), the second step is to determine whether the individual is exempted by both of the provisions of par. (b)." *Transport Oil* at 54 Wis.2d 262.

Citing Davis' Administrative Law Treatise,[3] this court stated that both basic and ultimate findings were required. The basic findings were whether the employee came within the coverage of sec. 108.02(3)(a), Stats.

preme Court of California held that an ultimate finding of convenience and necessity in granting operating authority to a highway common carrier was not enough without a statement of 'basic findings.' *(California Motor Transp. Co. v. Public Utilities Comm.*, 59 Cal.2d 270, 28 Cal. Rptr. 868, 379 P.2d 324 (1963)."

[2] "108.02. . . . (3) *Employe.* (a) 'Employe' means any individual who is or has been performing services for an employing unit, in an employment, whether or not he is paid directly by such employing unit; except as provided in par. (b). If a contractor performing services for an employing unit is an employee under this subsection and not an employer subject to the contribution provisions of this chapter, a person employed by the contractor in fulfillment of his contract with the employing unit shall be considered the employe of the employing unit.

"(b) Paragraph (a) shall not apply to an individual performing services for an employing unit if the employing unit satisfies the department as to both the following conditions:

"1. That such individual has been and will continue to be free from the employing unit's control or direction over the performance of his services both under his contract and in fact; and

"2. That such services have been performed in an independently established trade, business or profession in which the individual is customarily engaged."

[3] Davis, Administrative Law Treatise, secs. 16.05–16.07, pp. 444–459 (1958).

and whether he was exempted from coverage under sec. 108.02(3)(b), Stats. The agency made the second required basic finding, but not the first.

Relying upon *Transport Oil, supra,* the companies contend that more basic findings are required in this case. The most important reason for requiring an administrative agency to make findings is to facilitate judicial review.[4] The D.I.L.H.R. decision in the case before us will not be overturned because the findings made were very similar to the basic findings claimed to be lacking, and these findings allow for effective judicial review.

The companies argue that there were no basic findings: (1) that silicosis aggravated or contributed to the applicants' permanent disability; (2) that the applicants' total disability had any relation to the condition of silicosis or; (3) that some portion of the applicants' disability was attributable to silicosis. The findings quoted above state that the applicant was disabled by silicosis and that statement answers each of the companies' claims. These findings are specific or basic enough that judicial review is possible. The findings show that D.I.L.H.R. decided that silicosis was at least a factor in the applicant's disability. If the findings left the silicosis question open then judicial review would be difficult and the findings would be inadequate, but that is not the case here.[5]

---

[4] Davis, Administrative Law Treatise, sec. 16.05, p. 444 (1958). Davis Administrative Law Treatise, sec. 16.05, p. 573 (Supp. 1970).

[5] In reaching the conclusion we are not implying basic findings from ultimate findings. The findings in this case are not in the exact words requested by the plaintiffs, but the findings show that D.I.L.H.R. determined that silicosis was a factor in the applicant's injury. D.I.L.H.R. need not have found that silicosis was the main or only factor in the applicant's injury. It is

While the findings in this case are adequate to allow judicial review, we repeat the statement made in *Tews Lime & Cement Co. v. D.I.L.H.R.*, 38 Wis.2d 665, 675, 158 N.W.2d 377 (1968). Where facts are pled as a defense to a worker's compensation claim before D.I.L.H.R., the department is not required to make a specific finding in regard to the defense. However, the better practice is to make such a finding or state why no such finding was made.

*Credible Evidence To Support The D.I.L.H.R. Findings.*

The remaining issues on this appeal are whether there was any credible evidence to support the D.I.L.H.R. findings concerning temporary total disability and permanent total disability. *R. T. Madden v. I.L.H.R. Dept.*, 43 Wis.2d 528, 547, 169 N.W.2d 73 (1969). The circuit court correctly analyzed the record and authorities on this subject and concluded that there was credible evidence to support the D.I.L.H.R. findings.

(a) *Temporary Total Disability.*

D.I.L.H.R. found that the applicant was temporarily totally disabled from September 22, 1968 to March 22, 1969. The companies do not dispute the existence of the disability, but claim that there is no evidence to show that the disability was caused by silicosis. A D.I.L.H.R. finding that silicosis was the cause of an applicant's disability will not be disturbed if there is credible medical evidence that the silicosis was a material factor in the develop-

enough for recovery if the silicosis was a material factor. *Milwaukee Malleable & Grey Iron Works v. Industrial Comm.*, 239 Wis. 610, 615, 616, 2 N.W.2d 197 (1942).

ment of the pulmonary disease which resulted in the applicant's disability.[6]

Dr. Norbert Enzer testified that the x-ray films that he examined. . . "showed evidence of fine granular stippling in the lung pattern . . . compatible with some form of dust, reaction such as siderosis, silicosis or both." Dr. Enzer also testified from the x-ray films of the applicant's lungs that there, ". . . was a condition which prevailed in his lungs; namely silicosiderosis and emphysema." On cross-examination Dr. Enzer testified that ". . . siderosis and silicosis contributed to the background . . ." of the applicant's disability. This testimony was credible evidence that silicosis was a material factor in the development of the pulmonary disorder that caused the applicant's disability.

### (b)  *Permanent Disability.*

The companies contend that there is no credible evidence to support a finding of permanent total disability. In *Kurschner v. I.L.H.R. Dept.*, 40 Wis.2d 10, 19, 20, 161 N.W.2d 213 this court stated that,

". . . It is not enough under that statute (sec. 102.44 (3), Stats.) that medical experts make general statements about the ability of appellant to earn a living. Testimony must be offered that will permit a comparison between appellant's injury and an injury that would cause permanent total disability for industrial use. Such evidence was not presented to the examiner nor is there other evidence *from which such a comparison can be inferred.*" (Emphasis supplied.)

Dr. Enzer testified that the applicant could not carry on his work and that he was totally disabled for any

---

[6] *Milwaukee Malleable, supra,* n. 5, at p. 6.

sustained manual work or foundry work. In his medical report concerning the applicant Dr. Enzer stated,

"I regard Mr. B. as totally and permanently disabled for his customary employment. In view of his age, his symptoms and the objective data and my appraisal of him as a person, I regard him as totally and permanently disabled for heavy or moderately heavy labor and even for light work that would require sustained regular work hours. I regard his ability to maintain part-time work also as not a probability."

While this evidence does not use the comparison approach articulated in *Kurschner*, the testimony constitutes credible evidence from which such a comparison of permanent disability may be inferred.

In their brief plaintiffs rely on the D.I.L.H.R. Commission's striking the quoted portion of the examiner's findings that the applicant worked until July 17, 1970, ". . . at which time he was forced to take early retirement because of the silicosis." The companies contend that striking this finding also required D.I.L.H.R. to strike the ultimate finding of permanent disability. This result does not follow because there was other evidence of permanent disability in the record. Moreover, it is not the circumstances of the termination of employment that are controlling, but the actual medical or pathological condition of the worker. *Kohler Co. v. I.L.H.R. Dept.*, 42 Wis.2d 396, 402, 403, 167 N.W.2d 431 (1969).

*By the Court.*—Judgment affirmed.