GORANSON, Plaintiff-Appellant, v. DEPARTMENT OF IN-
DUSTRY, LABOR & HUMAN RELATIONS, and others,
Defendants-Respondents.

Supreme Court

*No. 77–388. Submitted on briefs February 7, 1980.——Decided March
4, 1980.*
(Also reported in 289 N.W.2d 270.)

538

540

For the appellant the cause was submitted on the brief of *James H. Taylor* and *Benson & Taylor* of Siren.

For the Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

DAY, J. This is an appeal from a judgment of the circuit court affirming the denial of worker's compensation benefits by the Department of Industry, Labor and Human Relations (hereinafter the Department) to David M. Goranson. The Department found, and the circuit court agreed, that Mr. Goranson's injuries did not arise out of a hazard of employment and that therefore his injuries were not compensable.

The issues raised by Mr. Goranson on appeal are:

1. Did the plaintiff waive his right to challenge the adequacy of the Department's findings?

We conclude that he did not.

2. Were the Department's findings adequate for purposes of judicial review and did the Department in making its findings, act within its lawful authority?

We conclude that the findings were adequate and proper.

3. Should sec. 903.01, Stats. 1977, be applied when presumptions arise in worker's compensation hearings before the Department?

We conclude that sec. 903.01, Stats. 1977, does not apply.

4. Were the Department's findings supported by credible evidence?

We conclude that they were and accordingly we affirm.

Mr. Goranson was injured when he jumped from his third floor hotel room at the Port Plaza Inn in Green Bay to the roof of the hotel kitchen located on the first floor. He suffered a broken hip and other injuries.

Hearings as to the cause and extent of the injuries sustained were held in Barron on July 9, 1975 and November 12, 1975. The hearings were concluded in Green Bay on March 10, 1976. The three examiners involved in the hearings issued their findings of fact and order denying compensation on April 27, 1976. The Department affirmed the order on August 13, 1976.

The relevant findings of the Department on this appeal are:

"That at 7:00 p.m. the applicant transported the group to a restaurant for dinner, returning to the hotel at approximately 11:00 p.m.; that the applicant subsequently went out to dinner himself, had a few glasses of beer, and returned to the hotel at 1:30 a.m.; that the applicant proceeded to his room and undressed; that at approximately 2:30 a.m., the applicant broke the window to his

room, crawled out onto the window ledge, and jumped; that the applicant landed on the roof of the hotel kitchen, two floors below his room, suffering multiple injuries; that the applicant's employment required that he travel to Green Bay; that at the time of injury the applicant was not engaged in a deviation for a private or personal purpose; that the applicant's injury occurred while he was performing services growing out of and incidental to his employment with the respondent; that the applicant's injury did not arise out of a hazard of such service, but rather arose out of a cause solely personal to him; that the injury did not arise out of the applicant's employment."

Mr. Goranson, when injured, was a bus driver for Whitie's Transportation, Inc. On November 2, 1974, he was assigned to drive a group of people from Barron to Green Bay for a professional football game to be held on November 3rd. The group arrived in Green Bay at approximately 2 p.m. on November 2, 1974. Mr. Goranson, along with his passengers checked into the Port Plaza Inn.

According to the applicant's own testimony, he checked into room 324. He had one or two drinks in the "hospitality room" set up by the members of the charter bus group, in the afternoon or early evening of November 2, 1974. At 7 p.m., he took part of the group to a restaurant for dinner on the bus, returning to the hotel at approximately 11:15–11:30 p.m. He did not eat until after he returned. With his dinner he had approximately four more drinks. He returned to the hotel at 12:30 a.m. and phoned his wife from the lobby.

He testified that he went up to his room around 12:45 a.m. He completed the required entries in his "log book" at approximately 1:30 a.m. He had a cigarette, folded his clothes, and went directly to bed. The door to his room was locked before he retired for the night.

According to Mr. Goranson, he went to sleep, and the next thing he could remember was that someone was in

the room and he was scuffling with them. He was pushed through the window and was hanging on the ledge outside, looking into the room. He saw a light on in the room and a man and a woman were in the room. He held on for a few minutes and then fell. Mr. Goranson stated at the hearing that although he did not know how the window was broken he ". . . was pushed through the hole, and it was already there."

There was considerable testimony which tended to cast doubt on Mr. Goranson's version of his activities after 11:30 p.m. Lawrence M. Cassidy, an off duty Green Bay police officer, who was acting as a security guard for the hotel the morning of the accident testified that at approximately 1:30 a.m. on the morning of November 3, 1975, he saw Mr. Goranson near the elevator in the lobby and that from his actions Mr. Cassidy concluded that Mr. Goranson had been drinking.

Mr. Goranson also made a number of statements prior to the hearing that were inconsistent with his testimony. He told an investigator from the workmen's compensation board that he had no alcoholic beverages prior to the accident. Although he denied telling police officers that he had a woman in the room with him, the police officer who investigated the accident made a report that was introduced into evidence at the hearing. That report stated that Goranson said, ". . . that he was out drinking and that he was with a woman but when he returned to the hotel he does not remember anything."[1]

One of the patrons of the hotel observed Mr. Goranson as he exited the window. In a recorded conversation, introduced at the hearing, the witness stated that he had

---

[1] A portion of Mr. Goranson's own testimony is as follows:

"*Q.* Isn't it a fact that you knew the identity of the woman that was in the room with you but refused to disclose that identity to the Green Bay Police that were investigating the incident?

"*A.* The man and the woman that I saw . . .

"*Q.* Excuse me. Just answer the question.

"*A.* No. I did not know her identity."

his window open and around 2:30 a.m. he heard "screaming and cussing" and it woke him up. He then heard the sound of glass breaking so he pulled back the curtain and saw Mr. Goranson "climbing out the window." The window was not open; Mr. Goranson was climbing through the hole in the glass. He was out to about his waist and was hanging by the top of the windowsill. The screen was around his head, he turned, stepped out on the ledge, and cut his leg. According to the witness, Mr. Goranson was acting like he "was dazed or drunk, or something." "[A]fter he turned around and he kind of stood and then he just turned around and just jumped." He did not see anyone pushing Mr. Goranson, nor did he see anyone in the room.

Another witness who woke up when he heard glass breaking, looked out his window, and saw Mr. Goranson on the roof of the kitchen. He saw the room with the broken glass, but said that the room was dark except perhaps for the hall light.

Three men on the fifth floor directly above Mr. Goranson's room, heard a woman's voice, some scuffling and then heard a loud bang and a woman say, "Oh, no."

When the room in which Mr. Goranson was staying was inspected, a small amount of blood was found on the sheets and pillowcases. One of the chairs in the room had been tipped over and it was located near the window, just below the broken pane. The chair had a broken arm. The police report stated that "[i]t looked like it had been used to knock out the window." Other than the tipped chair and the blood, the room was orderly and there was no sign of a struggle. The police inventory of the room revealed that the cigarette butts found in the hotel ashtray were from two different brands. The hotel rooms, including ashtrays, were normally cleaned each day. Apparently nothing of value was missing from the room.

The police officers who investigated this occurrence were of the opinion that Mr. Goranson was not fully co-operating with them. Although Mrs. Goranson stated at the hearing that she believed her husband was telling the truth, she said that she "thought David knew more than he was telling, yes."

*I.  Did the Plaintiff Waive His Right to Challenge the Adequacy of the Department's Findings?*

On appeal, this court will not consider issues beyond those which were properly before the court below. This rule applies equally to determinations made by the Department. *Gallagher v. Industrial Comm.*, 9 Wis.2d 361, 368, 101 N.W.2d 72 (1960). The Department argues that Mr. Goranson did not properly preserve the issue of the adequacy of the Department's findings because he did not raise the issue before the Department.

Waiver principles are not applicable to the errors alleged by the applicant in this case. It is not the examiner's order and findings that are appealed from, it is the Department's order. When the Department adopts the findings and order of the examiner, those findings become the Department's own. *Fitz v. Industrial Comm.*, 10 Wis.2d 202, 209, 102 N.W.2d 93 (1960). The ultimate responsibility for the findings made, is upon the Department itself. Consequently, on judicial review, it is the findings of the Department which are scrutinized for their adequacy. *Ace Refrigeration & H. Co. v. Industrial Comm.*, 32 Wis.2d 311, 315, 145 N.W.2d 777 (1966); *accord, Indianhead Truck Lines v. Industrial Comm.*, 17 Wis.2d 562, 567, 117 N.W.2d 679 (1962).

The applicant in this case challenged virtually every finding made by the examiners in seeking review of their

order before the Department. When the Department adopted the examiners' findings without modification, those findings became controlling on judicial review. If these findings are inadequate or contrary to law, the applicant cannot be deemed to have waived the defects by failing to point out the error to the agency. If the Department does not modify the findings of the examiners when those findings are challenged, and judicial review is sought, the error in the adequacy of the findings is not waived.

*II.   Were the Department's Findings Adequate for Purposes of Judicial Review and Did the Department in Making Its Findings Act Within Its Lawful Authority?*

The obligation upon the Department to make findings of facts is imposed by sec. 102.18(1)(b), Stats. 1977, which provides:

"102.18.   **Findings, orders and awards.**   (1) . . . (b) After final hearing the department shall make and file its findings upon the ultimate facts involved in the controversy, and its order, which shall state its determination as to the rights of the parties. Pending the final determination of any controversy before it, the department may in its discretion after any hearing make interlocutory findings, orders and awards which may be enforced in the same manner as final awards."

The statute has been consistently interpreted to require only that the Department make findings of ultimate facts as distinguished from evidentiary facts. *Universal Foundry Co. v. ILHR Dept.,* 82 Wis.2d 479, 483, 263 N.W.2d 172 (1978); *Stommel v. Industrial Comm.,* 15 Wis.2d 368, 372, 112 N.W.2d 904 (1962).

An ultimate fact, as that term used in worker's compensation cases in Wisconsin, is one "upon which the plaintiff's right of recovery necessarily depends." *Gerue v. Industrial Comm.*, 205 Wis. 68, 70, 236 N.W. 528 (1931). The most important reason for requiring adequate administrative findings is in order to facilitate judicial review. *Universal Foundry Co. v. ILHR Dept.*, 82 Wis.2d at 487.

Mr. Goranson argues that the findings and order of the Department demonstrate that his testimony regarding the events leading up to his injury was not accepted. Therefore, it is his contention that the Department was required to explain what exactly constituted the "cause solely personal" to Mr. Goranson. In order to make this determination, the Department would have to determine what in fact happened in the room. Only by doing so, it is asserted, can it be determined whether the injuries did or did not arise out of employment.

This court has reviewed decisions by the Department in previous compensation cases where the circumstances leading up to the accident were unknown or incapable of ascertainment.

In *Armstrong v. Industrial Comm.*, 254 Wis. 174, 35 N.W.2d 212 (1948), a travelling salesman was last seen alive when he left a customer and inquired as to the best way to get to a certain location where a relative lived. Nothing was known of his whereabouts until his body was located in a river. He apparently died from an accidental drowning. Depending upon the time of death, which was unknown, he could have been either within or without the course of his employment. This Court upheld the commission's denial of compensation, asserting that even given the presumption in the "travelling salesman" provision of the statute, the commission had sufficient evidence before it to support its denial of com-

pensation. "In commenting upon the evidence it should be kept clearly in mind that the commission was not seeking a complete explanation of decedent's death. Had this been the objective, it is probably true that such an explanation could only be arrived at by guess. The issue is whether there is . . . evidence that at the time of his death . . . [the employee] had deviated from his employment. . . ." *See also, Hansen v. Industrial Comm.,* 258 Wis. 623, 46 N.W.2d 754 (1951).

Mr. Goranson was the only eyewitness to the entire course of events leading up to his injury. It is apparant that the examiners and the Department discounted his testimony. Absent this testimony, there was very little in the record upon which to predicate a complete explanation of the circumstances surrounding Mr. Goranson's fall. It would have been impossible for the Department to have come up with an accurate factual account of the accident.

But this detail is not required. The Department need not make findings as to all of the events occurring prior to the injury. It was sufficient in this case, for purposes of judicial review, for the Department to determine that the applicant broke the window, crawled out, and jumped. The further finding that the injury did not arise out of employment but arose from a cause solely personal to the applicant, is adequate for judicial review. *See, generally, Valadzic v. Briggs & Stratton Corp.,* 92 Wis.2d 583, 590, 286 N.W.2d 540 (1979); *Reich v. ILHR Dept.,* 40 Wis.2d 244, 262, 161 N.W.2d 878 (1968).

The second question raised concerning the adequacy of the Department's findings is whether the findings made are inconsistent and contrary to law.

The Department's findings are fully consistent with the statutory requirements in the worker's compensation

law. Sec. 102.03(1), Stats. 1975,[2] enumerates the conditions required for employer liability, and provides a special presumption in favor of travelling employees. In order for liability to accrue, it is necessary both that the employee at the time of the accident be performing services growing out of and incidental to his employment and that the accident causing injury must arise out of his employment. *Cutler-Hammer, Inc. v. Industrial Comm.*, 5 Wis.2d 247, 250, 92 N.W.2d 824 (1958). The phrase "arising out of" refers to the causal origin of the injury and the "course of employment" phrase refers to the time, place, and circumstances of the accident in relation to the employment. A. Larson, 1 *The Law Of Workmen's Compensation*, §6.10 (1978).

The "travelling employee" statute does not modify these two requirements, it merely provides the employee with a statutory presumption in favor of both of these requirements.[3] It has been noted that even in those cases

_____

[2] Sec. 102.03(1), Stats. 1975, provides in pertinent part:

"102.03. **Conditions of liability.** (1) Liability under this chapter shall exist against an employer only where the following conditions concur:

"(a) Where the employe sustains an injury. . . .

"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. . . .

"(e) Where the accident or disease causing injury arises out of his employment.

"(f) Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

[3] This Court has primarily been faced with the "course of employment" part of the test. In those cases it is generally stated that in order to deny recovery under this provision of the worker's

where the travelling employee presumption applies, the "accident or disease *must arise* out of a hazard of such service. . . ." *Nielsen v. Industrial Comm.,* 14 Wis.2d 112, 118, 109 N.W.2d 483 (1961) (emphasis added).

The finding that Mr. Goranson was performing services growing out of and incidental to his employment, without deviation for a private or personal purpose, is fully consistent with the finding that the applicant's injury did not arise out of a hazard of his employment.

*III. Should Sec. 903.01, Stats. 1977, Be Applied When Presumptions Arise in Worker's Compensation Hearings Before the Department?*

It has been the consistent position of this court that the presumption in favor of travelling employees under sec. 102.03(1)(f), Stats., is rebuttable and drops out of consideration when evidence to the contrary is presented. *Tyrrell v. Industrial Comm.,* 27 Wis.2d 219, 224, 133 N.W.2d 810 (1965); *Armstrong v. Industrial Comm.,* 254 Wis. 174, 35 N.W.2d 212 (1948); *Dibble v. ILHR Dept.,* 40 Wis.2d 341, 347, 161 N.W.2d 913 (1968).

Conceding this point, the applicant urges this Court to adopt a twofold change in existing law. The first change would be to adopt the presumption set forth in sec. 903.01, Stats. 1977, which provides:

"903.01. **Presumptions in general.** Except as provided by statute, a presumption recognized at common

compensation law ". . . there must be (1) a deviation by the employee from his business trip, and (2) such deviation must be for a personal purpose not reasonably necessary for living or incidental thereto." *Hunter v. ILHR Dept.,* 64 Wis.2d 97, 101–102, 218 N.W.2d 314 (1974); *Dibble v. ILHR Dept.,* 40 Wis.2d 341, 346, 161 N.W.2d 913 (1968). These cases, and others like them, concern themselves with whether, when the accident occurred, the employee was acting within the time, place, and circumstances of his employment.

law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

The applicant contends that under this section, when the basic facts are shown, the burden is on the person attacking the presumed fact to prove the contrary by a "preponderance of the evidence."

There is no requirement that sec. 903.01, Stats., be adopted in hearings before the Department. The rules of evidence govern proceedings in the courts of the State of Wisconsin. Sec. 901.01, Stats. 1975;[4] *See also*, sec. 911.01, Stats. 1975. The Department is not a court. *Employers Mutual L. Ins. Co. v. Industrial Comm.*, 230 Wis. 374, 376, 284 N.W. 40 (1939). Proceedings before the Department in worker's compensation cases do not require strict adherence to the statutory rules of evidence. *See, Lager v. ILHR Dept.*, 50 Wis.2d 651, 660–661, 185 N.W.2d 300 (1971) ; and sec. 227.08, Stats. 1975.

Also, by adopting sec. 903.01, Stats., once the basic facts are shown, the Department would be required to determine whether a party has proved "that the nonexistence of the presumed fact is more probable than its existence." This type of balancing of the evidence has not been required in the past, because of the need perceived by this Court to allow the Department the widest possible latitude in making its decisions.

The second departure from existing law which would necessarily be required if sec. 903.01, Stats., is applied to

---

[4] Sec. 901.01, Stats. 1975, provides:

"901.01. **Scope.** Chapters 901 to 911 govern proceedings in the courts of the state of Wisconsin except as provided in ss. 911.01 and 972.11."

Department hearings, would be a change in the scope of judicial review of the findings of the Department. The applicant argues that the "any credible evidence" test for judicial review of the Department's findings should be abandoned when the travelling employee presumption is called into play. Thus, in this special class of cases, a more exacting judicial review would apply.

The arguments presented here are not unique and this court has considered similar arguments in past decisions. In *Phillips v. ILHR Dept.,* 56 Wis.2d 569, 577, 202 N.W. 2d 249 (1972), it was argued that the travelling employment special presumption was a "weak" one and that it could be refuted by intoxication evidence. This court concluded that the effect to be given the presumption was primarily for the Department to determine and that this court would review the Department's determination under the limited circumstances provided in the "any credible evidence" test. The court said:

"It is unnecessary to determine whether the traveling employment special presumption is strong or weak and is or is not rebutted by a given quantum of evidence to the contrary. As has been noted, the department's finding of fact may be reviewed in very limited situations." 56 Wis.2d at 577 (footnote omitted).

*Accord, Tyrrell v. Industrial Comm.,* 27 Wis.2d at 219; *Armstrong v. Industrial Comm.,* 254 Wis. at 178.

This court, in addition, has repeatedly rejected attempts to modify the standard of review applied in worker's compensation cases. In a recent case, *Consolidated Papers, Inc. v. ILHR Dept.,* 76 Wis.2d 210, 214–216, 251 N.W.2d 69 (1977), the employer urged this court to adopt a standard of review whereby the Department's findings would be reversed if found to be against the great weight of the evidence. This court examined earlier cases, and the purposes behind limiting review, concluding ultimately that there were sound policy and practical

reasons for retaining the any credible evidence standard of review.

The legislative purpose in restricting judicial review in worker's compensation cases is to limit appeals and protracted litigation in the interest of attaining speedy justice for the employee. *Consolidated Papers, Inc. v. ILHR Dept.*, 76 Wis.2d at 216; *R. T. Madden, Inc. v. ILHR Dept.*, 43 Wis.2d 528, 536, 169 N.W.2d 73 (1969).

### IV. *Were the Department's Findings Supported by Credible Evidence?*

The scope of judicial review of the Department's findings is whether there is any credible evidence in the record sufficient to support the findings made by the Department.[5] *R. T. Madden, Inc. v. ILHR Dept.*, 43 Wis. 2d 528, 547, 169 N.W.2d 73 (1969) ; *Kohler Co. v. ILHR Dept.*, 81 Wis.2d 11, 24, 259 N.W.2d 695 (1977) ; *Pfister*

---

[5] Sec. 102.23(1) (d), Stats. 1977, provides:

"102.23. **Judicial review.** (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive. The order or award granting or denying compensation, either interlocutory or final, whether judgment has been rendered thereon or not, is subject to review only in the manner and upon the grounds following. . . .

"(d) Upon such hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

"1. That the commission acted without or in excess of its powers.

"2. That the order or award was procured by fraud.

"3. That the findings of fact by the commission do not support the order or award."

*See,* sec. 15, Ch. 195, Laws of 1977, which added sec. 102.23(6), Stats., noted in *Valadzic v. Briggs & Stratton Corp.*, 92 Wis.2d at 593.

& *Vogel Tanning v. ILHR Dept.*, 86 Wis.2d 522, 525, 273 N.W.2d 293 (1979). For evidence to be credible, it must be evidentiary in nature and not a conclusion of law. It also must not be so discredited by other evidence that a court could find it incredible as a matter of law. The Department's findings must be upheld even though they are contrary to the great weight and clear preponderance of the evidence. *R. T. Madden, Inc., supra,* at 447–448. The credible evidence test has been applied consistently by the courts in worker's compensation cases and thus becomes part of the statute by interpretation. *Kohler Co., supra,* at 24. *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d at 593–594.

Mr. Goranson challenges two findings of the Department. The first is the finding that "the applicant broke the window to his room, crawled out onto the window ledge, and jumped. . . ." The second challenged finding is that the applicant's injury "arose out of a cause solely personal to him."

A disinterested witness heard the sound of breaking glass and saw Mr. Goranson climbing out the window. The witness did not see anyone pushing or any indication that Mr. Goranson was being pushed. He was also observed standing on the ledge momentarily and then he was seen jumping off the ledge. From the position of the chair, with its broken arm, the Department could have inferred that the chair was used to break the window. The determination as to who broke the window is not a key factor in this case. Mr. Goranson testified that he did not know how the window was broken but that the hole in the glass was there when he went through it. Though not supported by credible evidence, the erroneous finding that Mr. Goranson broke the window, does not require reversal.

The determinative question is whether the finding that the applicant's injury did not arise out of his employment is supported by credible evidence.

The statutory phrase "arises out of his employment" is not synonymous with the phrase "caused by the employment." In interpreting the meaning of this statutory language the "positional risk" doctrine is applied. *Cutler-Hammer, Inc. v. Industrial Comm.*, 5 Wis.2d 247, 254, 92 N.W.2d 824 (1958); *Nash-Kelvinator Corp. v. Industrial Comm.*, 266 Wis. 81, 86–87, 62 N.W.2d 567 (1954). The definition of the positional risk doctrine can be stated as follows: "[A]ccidents arise out of employment if the conditions or obligations of the employment create a zone of special danger out of which the accident causing the injury arose. Stated another way, an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of special danger." *Cutler–Hammer, Inc. v. Industrial Comm.*, 5 Wis.2d at 254; *see, Allied Mfg., Inc. v. ILHR Dept.*, 45 Wis.2d 563, 173 N.W.2d 690 (1970).

However, an employee may still step outside of the employment relationship even in situations where the positional risk doctrine might otherwise apply. The employee may have, for the time being, completely disassociated himself from the employment relation. "An employee may wilfully do a wrongful act for purposes entirely foreign to his employment, and while so acting take himself without the scope of his employment. . . . Such a departure . . . measured in terms of time and space, may be very slight." *Peterman v. Industrial Comm.*, 228 Wis. 352, 358, 280 N.W. 379 (1938), *quoted with approval in Nash-Kelvinator Corp.*, 266 Wis. at 87.

From the physical evidence and the testimony presented to the Department, there is credible evidence to support the finding of the Department that the injuries arose out of a cause solely personal to the employee and did not arise out of the employment relationship. There is evidence, admittedly much of it circumstantial, that Mr. Goranson voluntarily allowed someone into the room. That evidence included: (1) the two different brands of cigarettes found in the ashtray in the room; (2) Mr. Goranson's admissions to the police officers that a woman was with him in the room; (3) the room was locked at all times when the door was closed and there was no sign of forced entry; (4) nothing in the room was disturbed other than the chair and there was no indication that anything was taken from the room. There is also evidence from numerous witnesses that an argument ensued and that for reasons known only to Mr. Goranson he crawled out of the window, stood on the ledge, and jumped.

The credibility of a witness and the persuasiveness of the testimony rendered are for the Department to determine. *Massachusetts B. & Ins. Co. v. Industrial Comm.,* 8 Wis.2d 606, 610, 99 N.W.2d 809 (1959). Given the vague details, the inconsistent statements given by Mr. Goranson, and the physical evidence which contradicted his testimony, the Department acted reasonably in discounting Mr. Goranson's testimony.

Even if there was an assault on Mr. Goranson, if that assault was entirely personal, he is not entitled to recover.

". . . [i]t is particularly important to keep constantly in mind that the motivation of the assault, . . . must not be 'personal vengeance stemming from contact with the employee outside the employment.' When it is clear that the origin of the assault was purely private and personal,

and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable even in states fully accepting the positional risk test. . . ." A. Larson, *The Positional-Risk Doctrine In Workmen's Compensation,* 1973 Duke L.J. 761, 796.

Consideration of the entire record before the Department demonstrates that there was credible evidence to show that if Mr. Goranson was assaulted, the assault was entirely personal to him, and thus noncompensable.

Mr. Goranson attempts to compare this case with the California Supreme Court's decision in *Wiseman v. Industrial Accident Comm.,* 46 Cal.2d 570, 297 P.2d 649 (1956). In that case the travelling employee died in a hotel fire while with a woman who was not his wife. Because the risk of fire was no greater or less by having the woman present it was held that recovery would not be denied. That case stands solely for the proposition that in the absence of a direct connection between the employee's unlawful and immoral purpose and the risk, the existence of such purpose cannot justify the conclusion that the connection between the injury and the employment is so remote from the employment that it did not arise from the employment.

The important distinction between the case at bar and *Wiseman* is that in the present case, there is a direct link between the presence of a woman and the injury sustained by the employee. The situation in which Mr. Goranson found himself was not one which was created by the risk of staying at the hotel. The Department is supported by credible evidence in its conclusion that Mr. Goranson deliberately acted to place himself in a position where he sustained an injury which was not a risk incidental to his employment relationship with the Whitie's Transportation Company as a bus driver.

*By the Court.*—Judgment affirmed.